### N. J. HALL V. HUGH MILLER, TAX COLLECTOR.

No. 1921. Decided February 10, 1909.

**1.—Taxation—Personal Property—Ownership—Situs.**

Personal property situated in Texas is taxable here though owned by a nonresident( Const., art. 8, sec. 1; Rev. Stats., art. 5061); and this liability is not affected by the statute making personal property of citizens of the State taxable here, though situated in another State (Rev. Stats., art. 5063); nor by the statute of 1905 (Act of May 15, Laws 29th Leg. p. 436) levying a tax "on all property owned in the State," the same being owned in the State if situated here, though the ownership was by a nonresident. (Pp. 293, 294.)

**2.—Same—Cases Followed.**

State v. Deposit Co., 35 Texas Civ. App., 214; Scottish Union & Natl. Ins. Co. v. Bowland, 196 U. S., 629; Hardesty Bros. v. Fleming, 57 Texas, 401, followed. (P. 294.)

**3.—Personal Property—Notes—Situs.**

Personal property, including promissory notes, owned by a nonresident does not become taxable in Texas by reason of being temporarily within its borders; but may acquire a situs and become taxable here though owned by a resident of another State. (P. 294.)

**4.—Same—Case Stated.**

A resident of Missouri owning lands in Texas made sales thereof through local agents, the notes and mortgages securing the deferred payments being left in the hands of the local agents for collection as they fell due. Held that the notes thereby acquired a situs for purposes of taxation in the State and in the county where they were so held by the agents, and were subject to state and county taxes there. Ferris v. Kimble, 75 Texas, 476, distinguished. (Pp. 294–297.)

Error to the Court of Civil Appeals for the Third District, in an appeal from San Saba County.

Hall brought suit to enjoin Miller, the tax collector, from enforcing the collection of certain taxes. He appealed from a judgment for defendant, and on its affirmance obtained writ of error.

*W. M. Allison* and *N. A. Rector,* for plaintiff in error.—Promissory notes, not employed or used in any business, being intangible personal property, are taxable only at the place of residence of the owner, without regard to the place where they are kept or deposited, and equally without regard to how they were earned, or the consideration for which they were executed; and such notes, when owned by a resident of another State, acquire no business situs in Texas by reason of being in the hands of an agent for the limited purpose of collection and paying over proceeds to the owner, no power or authority being in the agent to renew or extend, or make any change in said notes, or loan or reinvest proceeds, but held by him for the sole purpose of collection and paying proceeds to the owner. Ferris v. Kimble, 75

Texas, 476; Primm v. Fort, 23 Civ. App., 616; Jesse French Piano Co. v. City of Dallas, 61 S. W., 942; State v. Fidelity & Deposit Co., 35 Texas Civ. App., 214; Buck v. Miller, 147 Ind., 586, 62 Am. St. Rep., 445 et seq.; Boyd v. Selma, 16 L. R. A., 729; Herron v. Keeran, 59 Ind., 472, 26 Am. Rep., 87; Buck v. Beach, 206 U. S., 392.

Promissory notes belonging to a resident of the State of Missouri and left in Texas for collection are not within this State as contemplated by the tax laws. Meyers v. Seaberger, 45 Ohio St., 232; Williams v. Wayne County, supra, 78 N. Y., 561; Herron v. Keeran, 59 Ind., 472.

A statute requiring a citizen of Texas to list for taxation all "other property invested, loaned, or otherwise controlled, by him as agent or attorney, or on account of any other person," etc., does not warrant taxing promissory notes belonging to a nonresident, held by a resident agent for the purpose of collection and paying over proceeds to the nonresident owner.

The trial court erred in its judgment in favor of defendant Miller and against plaintiff Hall, because the agreed case shows the notes involved were owned by a bona fide resident citizen of the State of Missouri, and had no situs in Texas, but were temporarily in the State for collection, and were entirely disconnected from any character of business in Texas, and the effect of the trial court's judgment would be the taxation of intangible personal property beyond the jurisdiction of the State, and the deprivation by the State of property belonging to plaintiff Hall without due process of law, and in violation of the 14th Amendment of the Constitution of the United States. Cooley on Tax. (2d ed.), pp. 5, 55, 159; State Tax on Foreign held bonds, 15 Wall., 300; Hunters v. Supervisors, 33 Iowa, 376; Kirkland v. Hotchkiss, 42 Conn., 426 (19 Am. Rep., 546). Also authorities cited under first propositions; Subdivision, 2d art., 5067, Rev. Stats.; Ferris v. Kimble, 75 Texas, 476; Herron v. Keeran, 59 Ind., 472; Buck v. Beach, 206 U. S., 392.

*Leigh Burleson,* for defendant in error.—If the concrete evidences of credits owned by a nonresident, such as promissory notes, bonds and mortgages are permanently kept within one State, their situs, for the purposes of taxation, is in that State. Further, if the tangible evidences of a nonresident's investments are kept within one State permanently in the hands of an agent their situs for the purpose of taxation is in that State. McCulloch v. State of Maryland, 4 Wheat., 316; Pullman P. C. Co. v. Pennsylvania, 141 U. S., 18; New Orleans v. Stemple, 175 U. S., 309; People v. Board, etc., 48 N. Y., 390; People v. Smith, 88 N. Y., 576; Wilcox v. Ellis, 14 Kan., 588; People v. Commissioners, 23 N. Y., 224; In re Romaine's Est., 127 N. Y., 80; Gallup v. Schmidt, 154 Ind., 196; Monongahela R., etc., Co. v. Board of Assessors, 115 La., 564; Buck v. Miller, 147 Ind., 586; Buck v. Beach, 164 Ind., 37; Redmond v. Commissioners, 87 N. C., 122; Metropolitan L. Ins. Co. v. Board, etc., 115 La., 699; s. c., 205 U. S., 395; State Assessor v. Comptoir National, 191 U. S., 388; Judson on Taxation, secs. 394, 397; Burroughs on Taxation, 60,

sec. 50b; 1 Destey on Taxation, 322, sec. 67; Cooley on Taxation, 270-272; Boyd v. Selma, 96 Ala., 144; Jesse French P. & O. Co. v. Dallas, 2 Texas Ct. Rep., 260.

If all the land was sold and the business closed and these notes were still held in this State, and by appellant's own act were separated from his person and his domicile, and held in this State for safe keeping and for the purpose of collecting them, their situs for the purpose of taxation is established here. This view is supported by many well considered cases from the courts of other States, as well as being time and again recognized by the Supreme Court of the United States. We refer the court to the Monographic note to Buck v. Miller, 62 Am. St. Rep., 448; Hall v. American Refrigerator Co., 65 Am. St. Rep., 223; Armour Packing Co. v. City Council, 98 Am. St. Rep., 134; Buck v. Beach, 108 Am. St. Rep., 272; Monographic note to Met. Life Ins. Co. v. Board, etc., 116 Am. St. Rep., 191; Bristol v. Washington Co., 177 U. S., 133; New Orleans v. Stemple, 175 U. S., 309; State Assessors v. Comptoir Nat., etc., 191 U. S., 388; Monongahela R., etc., Co. v. Board of Assessors, 112 Am. St. Rep., 275. Many other authorities upon the same line might be cited.

MR. JUSTICE BROWN delivered the opinion of the court.

N. J. Hall filed this suit in the District Court of San Saba County to restrain Miller, the tax collector of the county, from enforcing the collection of certain taxes assessed against Hall in that county. The case was tried before the judge, who rendered judgment against Hall, which was affirmed by the Court of Civil Appeals. The facts were agreed to as follows:

"On January 1, 1906, and on January 1, 1907, plaintiff, N. J. Hall, with his family resided in Jackson County; Missouri, and he had so resided there continually for more than ten years next preceding the institution of this suit.

"That on said January 1, 1906, said Hall was the owner of promissory notes of the aggregate value of $37,500, payable to the order of N. J. Hall at San Saba, Texas, and on January 1, 1907, said Hall was the owner of promissory notes of the value of $78,785, payable to the order of said Hall at San Saba, Texas.

"That the consideration of all of said notes was lands sold by said Hall to different purchasers, and that said lands were situated in San Saba County, Texas, and that the purchasers were residents of said county and that the payment of said notes was secured by vendor's lien on the lands conveyed.

"That acting under the instructions of plaintiff Hall, W. M. & Matt Allison, of San Saba, Texas, as his agents, negotiated the sale of said lands, prepared the deeds and notes for the different purchasers, and upon approval of said sales by said Hall, he in his own person executed deeds to said purchasers, and the cash payments and notes for deferred payments were delivered by the different purchasers to said W. M. & Matt Allison (when sale was closed) who deposited the money in local bank to the credit of said N. J. Hall, and from time to time advised him of the standing of his account with said

bank; and said Hall from time to time moved said money to his home in Missouri, or otherwise used same as he wished. The notes taken by said W. M. & Matt Allison were left with them for collection, and any money afterwards paid on said notes was placed to the credit of said Hall in banks, and withdrawn by him as hereinbefore stated.

"And on January 1, 1906, said W. M. & Matt Allison held said land notes of the value of $37,500 at their office at San Saba, Texas, and on January 1, 1907, said W. M. and Matt Allison held in their office at San Saba, Texas, for said Hall said land notes of the value of $87,785; that all of said notes of the aggregate value of $116,285 were at all times held by said W. M. & Matt Allison subject to the order and control of plaintiff Hall, and that said W. M. and Matt Allison neither had nor exercised any control over said notes except to collect them as they might from time to time mature, or otherwise dispose of them as said Hall might direct. Upon final payment of any series of notes by the purchaser, said W. M. and Matt Allison, would prepare and forward to plaintiff N. J. Hall, at his home in Missouri, release of vendor's lien, which said Hall would execute and return to San Saba, Texas, for delivery to such purchaser.

"Plaintiff Hall first began selling off land and accepting said notes in part payment during the latter part of the year 1903, but most of the sales were made and notes taken during the years 1905-6. Upon sale of said lands, purchasers would pay part cash and execute aforesaid notes, for deferred payments. Said W. M. & Matt Allison did not have any power of attorney or other writing authorizing them to sell said lands, execute deeds, releases, or other instruments, but prices and terms were fixed by said Hall and lands sold accordingly, and reported to him, and he would execute conveyances and authorize W. M. & Matt Allison to deliver deed upon payment of the cash consideration and execution of the notes according to the terms of each deed. Hall's purposes, as expressed by him at the time he first began the sale of said land, was that he was getting old and his business too much scattered, and he wanted to get it all together nearer his home in Missouri, and for this reason wanted to close out his lands in Texas.

"Said notes, aggregating $116,285, were left by plaintiff Hall with said W. M. & Matt Allison, and have been in their custody since they at different times were executed; and any partial payments since made were credited on said notes and money placed in local bank to the credit of said Hall, and was afterwards withdrawn by him in person.

"Plaintiff Hall owned other property in San Saba County on January 1, 1906, and January 1, 1907, and has paid all taxes assessed against him for said two years, except taxes on the notes in question, but has refused to pay taxes on said notes, and has never rendered the same for taxation in this State, or in the State of Missouri.

"Plaintiff Hall has paid said W. M. & Matt Allison 5 percent commission for selling said lands, and they prepared all instruments necessary in connection with such sales without any additional charge. It was the custom of said W. M. & Matt Allison to collect one-half of their 5 percent commission within a short time after making

several land sales, but the other one-half was not demanded by them until after six or perhaps twelve months thereafter, as plaintiff could conveniently pay the same or the condition of his finances derived from land sales and all other sources would justify, but the payment of the balance of this commission to said W. M. & Matt Allison was not in any way dependent or conditioned upon the collection of the notes in question or any of them.

"Said W. M. & Matt Allison, who are attorneys, also represented said Hall in other important legal matters in said county, but the lands sold and the notes in question had no connection with such other matters, or with any business of said Hall's in said county or in said State of Texas, nor were said notes used in any of said Hall's business in said State.

"It is further agreed, preliminary questions being waived, that the only issue submitted is whether or not said notes of the value of $116,285 are taxable for the year 1906 and 1907 as assessed, and if said notes are held taxable, judgment be rendered against plaintiff Hall, for the taxes due thereon, besides any legal interest, penalties, costs, etc.; and if said notes be held not taxable, that judgment be rendered for plaintiff Hall, and the temporary injunction heretofore granted be made perpetual, and for costs."

Counsel for plaintiff in error contend that the notes involved in this litigation are not included as subjects of taxation in the statutes of this State, that is, Hall being a nonresident of this State, this property, although situated within the State, is not subject to be taxed.

Article 8, section 1, of the Constitution of the State, contains this provision: "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." This language is broad enough to embrace every kind and class of property within the limits of the State over which the State has jurisdiction whether it be owned by citizens or nonresidents.

The policy declared by the Constitution was also expressed by the Legislature in article 5061, Revised Statutes, as follows: "All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation and the same shall be rendered and listed as herein prescribed." That article is in harmony with the Constitution and was enacted for the purpose of putting that provision of the Constitution into effect.

It is claimed for plaintiff in error that the effect of article 5063 of the Revised Statutes is to limit the levy of taxes "upon all moneys, credits, bonds and other evidences of debt," to such as belong to citizens of the State, therefore Hall, being a nonresident of the State, his notes, although within the limits of the State, are not subject to taxation. The article is in these words:

"Personal property shall, for the purposes of taxation, be construed to include all goods, chattels and effects, and all moneys, credits, bonds, and other evidences of debt owned by citizens of the State, whether the same be in or out of the State," etc.

We are of opinion that such construction can not be sustained. The Legislature had in mind the fact that citizens of Texas habitually sent property of that class out of the State before the first day of January for the purpose of evading the tax laws, and it was the purpose of the lawmakers to direct the officers to assess such property when it should be brought back into the State. This interpretation is sustained by the language of the several laws which have fixed the rates to be levied. We quote from the Act of the Twenty-ninth Legislature: "That there shall be levied and collected for general revenue purposes, annually for the years 1905 and 1906, an ad valorem tax of twenty cents . . . on the one hundred dollars of the cash value thereof, estimated in lawful currency of the United States, on all real property situated and on all property owned in the State on the first day of January in each and every year, and on all property sent out of the State prior to the first day of January for the purpose of evading the payment of taxes thereon and afterwards returned to the State." That Act expresses fully the purpose of the Legislature to tax all property in the State and to accomplish which attention was thus called to the evasion of the law. The language of the Act of 1905 and of article 5063, taken together, manifest a clear purpose of the Legislature not to limit the scope of the tax laws, but really to enlarge them so as to embrace property which otherwise might escape the burden of taxation. This question was presented to this court in an application for writ of error in State v. Deposit Company, 35 Texas Civ. App., 214. The same contention was made in that application which was denied. See Scottish Union & Natl. Ins. Co. v. Bowland, 196 U. S., 629; Laws 1905, p. 436.

Again, it is urged by the plaintiff in error that under the statute of 1905, which levies the tax "on all property owned in the State on the first day of January of each year," the property in question would not be included, because it was not owned in this State, but in the State of Missouri, where its owner lived. That question was decided adversely to the contention of the plaintiff in error in the case of Hardesty Bros. v. Fleming, 57 Texas, 401, wherein the Supreme Court said that it was not necessary that the owner of the property should reside within the State in order that the property situated here should be owned in this State. That would be true of property temporarily in the State, but not of such as has acquired a situs here.

If the construction of our laws contended for by plaintiff in error were sustained, no personal property situated in this State and owned by nonresidents could be made to pay taxes no matter how permanently it might be located in this jurisdiction.

A State has no authority to levy taxes upon personal property temporarily within its borders when the owner resides elsewhere. But it is equally true that tangible personal property which has acquired a situs within the State is subject to taxation, although the owner be a nonresident thereof. Hardesty v. Fleming, 57 Texas, 401; Eidman v. Martinez, 184 U. S., 578; Bristol v. Washington County, 177 U. S., 133. Promissory notes and bonds are now recog-

nized as property and are included in the terms of the statutes of 1905 which we have quoted above. New Orleans v. Stempel, 175 U. S., 322; Catlin v. Hull, 21 Vt., 152. In the first case cited the court said: "It is well settled that bank bills and municipal bonds are in such concrete tangible form that they are subject to taxation where found, irrespective of the domicile of the owner; are subject to levy and sale on execution, and to seizure and delivery under replevin; and yet they are but promises to pay—evidences of existing indebtedness. Notes and mortgages are of the same nature; and while they may not have become so generally recognized as tangible personal property, yet they have such a concrete form that we see no reason why a statute may not declare that if found within its limits they shall be subject to taxation."

The question upon which the decision of this case depends is, do the facts show that the notes involved in this suit had acquired such a situs in Texas as to subject them to the taxing power of the State?

It has been determined in this State that bonds and notes, the property of nonresidents, which have acquired a situs within this State and which are being used in this State in connection with some business carried on for the owner are subject to taxation. State v. Deposit Co., 35 Texas Civ. App., 214.

In the case of Bristol v. Washington County, before cited, the facts, briefly stated, were that one Jeffries, a citizen and resident of the State of New York, through agents living in the State of Minnesota, loaned large sums of money to persons who were residents of the latter State, taking notes for the money loaned, payable at a place within the State of Minnesota, and also taking mortgages upon real estate to secure the notes. The notes and mortgages remained in the State of Minnesota in the hands of the agents and upon collection the money was subject to be loaned again by the agent. After the death of Jeffries, his daughter, Mrs. Bristol, who was his legatee, continued the business through the same agents, but finally removed the notes to the State of New York. The officials in the State of Minnesota levied taxes upon the notes, which Mrs. Bristol contested, and the Supreme Court of the United States held that the notes had such a situs in the State of Minnesota as made them subject to the tax.

Under the laws of the State of Louisiana the city of New Orleans levied a tax upon notes held within the city which belonged to a citizen and resident of the State of New York. The Supreme Court of the United States stated the case as follows: "It appears that these credits were evidenced by notes largely secured by mortgages on real estate in New Orleans; that these notes and mortgages were in the city of New Orleans, in possession of an agent of the plaintiff, who collected the interest and principal as it became due and deposited the same in a bank in New Orleans to the credit of the plaintiff. The question, therefore, is distinctly presented, whether because the owners were domiciled in the State of New York, the moneys so deposited in a bank within the limits of the State of Louisiana, and the notes secured by mortgages situated and held as above described, were free from taxation in the latter State."

(New Orleans v. Stempel, 175 U. S., 312.)    Under this State of facts that court after a careful review of the authorities decided that the notes had such a situs in the State of Louisiana as rendered them subject to taxation under the laws of that State.    To the same effect is Catlin v. Hull, 21 Vt., 152.

We turn now to the facts of the case under investigation to ascertain if, in view of the authorities and general principles laid down, the facts are sufficient to sustain the judgment of the court subjecting the notes to the tax levied upon them by the State of Texas.    The actual physical location or situs of the notes was in Texas, and there is no fact absent from this case that was present in the case of New Orleans v. Stempel, before cited, except the authority of the agents to reinvest or lend the money when collected.    That fact is not necessary to establish a definite situs, place or location of the notes but would be evidence tending to establish the permanency of that situs, if there were a doubt about it.    In this case there was no pretense that the notes were to be removed from the State before their payment, but they were left here for the purpose of being enforced; they had the full benefit and protection of the laws of this State in every sense that property of that kind can be protected.    In Scottish U. & N. Ins. Co. v. Bowland, 196 U. S., 629, the Supreme Court said: "There is no reason why the law should tax such securities in the hands of individual residents, whether owned or held by them for others, and permit them to escape taxation when they represent invested capital of incorporated companies, sharing the protection of the government and equally bound in morals, at least, to help bear the burdens of the State."    The notes had their origin in Texas, were payable in Texas, and were secured by a lien on land in this State, had never been actually in the possession of the owner, but remained continuously in Texas.    If it be possible for such property to acquire a situs separate from the domicile of the owner, surely these notes had a location in Texas.    The presence of the notes in Texas is the "dominant factor" in this case.    Metropolitan L. Ins. Co. v. New Orleans, 205 U. S., 400.

Ferris v. Kimble, 75 Texas, 476, is relied on as announcing a different doctrine, but when we look to the facts of the case the language of the judge who delivered the opinion becomes clear and asserts no proposition in conflict with the decisions which we have cited.    Ferris resided outside of the city of Waxahachie, having an office inside the city in which he transacted his business as a lawyer. He owned promissory notes of persons who lived in and outside of the city, given to him for money loaned and for services rendered, and other considerations.    Ferris kept his notes in a portfolio which belonged to himself, and which he controlled personally, keeping it in the vault of a bank inside the city of Waxahachie for safety, but no person other than himself had authority over the notes.    It will be observed that the facts distinguish that case from this; in that case the notes were in possession of the owner, Ferris, at all times; therefore the situs of those notes must necessarily have been drawn to the actual residence of the owner of the property.    That case is not in conflict with our conclusion.

We are of opinion that the notes of Hall, situated in San Saba County, as shown by the testimony, had acquired such permanent location in the State of Texas as rendered them subject to taxation under the laws of this State, notwithstanding Hall was a citizen of the State of Missouri. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be, and they are, hereby affirmed.

*Affirmed.*