GUARANTEE LIFE INS. CO. OF HOUSTON v. CITY OF AUSTIN. †

(Court of Civil Appeals of Texas. Austin. March 11, 1914. Rehearing Denied March 25, 1914.)

1. TAXATION (§ 167*)—CORPORATIONS—CAPITAL STOCK—EMPLOYMENT IN BUSINESS.
Where, pursuant to Acts 30th Leg. c. 170, § 8, authorizing insurance companies to deposit with the state treasurer their capital stock, or the securities covering it, and at their option to withdraw or substitute such stock or securities, an insurance corporation having its office in Houston deposited the securities in which its capital stock was invested, thereby obtaining a better financial standing by reason of its ability to advertise and print on its policies the fact of such deposit, such securities were not employed in its business in Austin so as to be subject to taxation there.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 290; Dec. Dig. § 167.*]

2. TAXATION (§ 74*)—"PROPERTY" SUBJECT—EVIDENCES OF DEBT.
For the purposes of taxation, bonds, notes, and other negotiable instruments are "property," and not mere evidences of debt, in view of Rev. St. 1911, art. 7505, defining personal property for the purposes of taxation as including all evidences of debt owned by citizens of the state.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 159, 160; Dec. Dig. § 74.*
For other definitions, see Words and Phrases, vol. 6, pp. 5693–5728; vol. 8, p. 7768–7770.]

3. TAXATION (§ 276*)—PROPERTY SUBJECT—SITUS OF PROPERTY.
Where, pursuant to Acts 30th Leg. c. 170, § 8, authorizing insurance companies to deposit their capital stock, or the securities covering it, with the state treasurer, an insurance company having its office in Houston did so deposit the secured notes in which its capital stock was invested, and the corporation advertised and printed the fact of such deposit on its policies, thereby obtaining better financial standing, the situs of such notes was in Austin, and they were taxable there under Const. art. 8, § 11, providing that all property shall be assessed for taxation and the taxes paid in the county were situated, since, aside from the question of whether they were property or only evidences of debt, the fiction of law that tangible property follows its owner is disregarded in the state, when opposed to the equitable consideration that property ought to bear its just proportion of taxes at the place where it receives governmental protection.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 453, 466–468; Dec. Dig. § 276.*]

4. TAXATION (§ 587*)—PROPERTY SUBJECT—SITUS OF PROPERTY.
The illegal assessment and voluntary payment, in the city where a corporation was domiciled, of a tax on securities having a situs in another city was not a defense to the enforcement of a tax thereon by the city where they were situated.
[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1196–1200; Dec. Dig. § 587.*]

Appeal from District Court, Travis County; George Calhoun, Judge.

Action between the Guarantee Life Insurance Company of Houston, Tex., and the City of Austin. From a judgment for the City, the Insurance Company appeals. Affirmed.

Lane, Wolters & Storey and Wm. A. Vinson, all of Houston, for appellant. J. Bouldin Rector, City Atty., J. W. Maxwell, and Lightfoot, Brady & Robertson, all of Austin, for appellee.

JENKINS, J. This case was tried before the court, without a jury, on the following agreed statement of facts (omitting exhibits):

"(1) That the city of Austin is a municipal corporation, duly and legally incorporated by a special act of the Legislature of the state of Texas, and having its domicile in Travis county, Tex., and whose mayor is A. P. Wooldridge.

"(2) That the Guarantee Life Insurance Company of Houston, Tex., is a corporation, duly and legally incorporated under and by virtue of the laws of the state of Texas, for the corporate purpose of doing a life insurance business in Texas, and whose principal place of business is in Houston, Harris county, Tex., and whose secretary is H. W. Cochnower, who resides in Harris county, Tex.

"(3) That the Guarantee Life Insurance Company of Houston, Tex., has filed all the articles of incorporation, etc., paid all the franchise taxes, etc., and in fact performed all the obligations and duties required of it by the laws of the state of Texas, and by the rules of the commissioner of insurance and banking of the state of Texas, to properly and legally do business in the state of Texas, but has not paid to plaintiff the taxes claimed by it.

"(4) It is agreed that, under and by virtue of its charter of incorporation, the plaintiff has, and continually has had, since the date of its original incorporation, the power and authority, to be exercised by its city council,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Application for writ of error pending in Supreme Court.

to levy and collect annual taxes for current expenses and public free schools, and to pay interest and sinking fund annually on valid bonded indebtedness of the city, and for various other purposes, 2½ per cent. on the assessed value of all property in said city, on property made taxable by law for county and state purposes.

"(5) It is agreed that plaintiff, acting under and by virtue of the power and authority so vested in it, and by its city council, by ordinances duly passed for that purpose, and duly approved by its mayor, on the dates hereinafter mentioned, did lawfully levy the following taxes for the years hereinafter mentioned and set out; the amounts of said taxes levied for the purposes set out being the sums levied on each $100 worth and valuation of all property situated within the corporate limits of said city, and taxable by law for state and county purposes:   .

"1908.

"For the year 1908, by ordinance duly passed on October 19, 1908, and approved October 20, 1908, for current expenses and general improvements of the city and its property, $1 on each $100 worth of valuation of all property in said city, for the purpose of paying interest and creating a sinking fund on the valid bonded indebtedness of the city, 50 cents on each $100 worth and valuation of property, and, for the support of the public schools of the city, 33⅓ cents on each $100 worth and valuation of such property.

"1909.

"For the year 1909, by ordinance duly passed December 29, 1909, and approved December 29, 1909, for current expenses and general improvement of the city and its property, 95 cents on each $100 worth of and valuation of all property in said city, and, for the payment of interest and creating a sinking fund on the valid bonded indebtedness of the city, 38 cents on each $100 worth and valuation of property, and, for the support of the public free schools of the city, 33⅓ cents on each $100 worth and valuation of such property.   .

"(6) It is agreed that all taxes properly and lawfully levied and assessed by virtue of the charter and ordinances of the said city of Austin become a first lien on said property, and that, in case the court shall hold that the defendant is due taxes on the property described herein, and in plaintiff's petition, or any part thereof, that the plaintiff is entitled to a lien on said property to secure the payment of said taxes.

"(7) It is further agreed that, in the assessment of the property described herein, the same has been duly and legally assessed in accordance with all forms and regulations of the city charter, and the ordinance applying thereto.

"(8) It is agreed that, under and by virtue of the city charter of the city of Austin, and all ordinances now in force by said city, that the whole amount of taxes bears interest at the rate of 6 per cent. per annum from the date said tax became delinquent, and that the said city has a lien on the property to secure the payment of the said interest, if entitled to recover of defendant said taxes.

"(9) It is agreed that the city, under its charter, and by proper ordinance, has provided for the collection of an additional 5 per cent. upon the amount of said delinquent taxes as a penalty against the delinquent taxpayer failing, neglecting, or refusing to pay said taxes before the same shall have become delinquent, and that the said 5 per cent. penalty shall be a part of said taxes and a lien against the property on which said taxes are due, if entitled to recover of defendant said taxes.   ·

"(10) It is agreed that the city charter of the city of Austin provides that, if the city assessor or collector shall discover any property subject to taxation for any year heretofore, and which shall for any cause escape taxation, he shall require the same to be listed and assessed according to the rate of taxation levied for the year or years it was omitted, and enter the same as a supplement to the next roll, stating the year, and the taxes thereon shall be collected in the same manner as other assessments: Provided, that such supplementary roll may be made at any time, and reported to the city council for its approval. The taxes assessed upon such supplemental rolls shall be due at once upon approval of such roll by the city council, and, if not paid within 60 days thereafter, shall bear interest at the rate of 6 per cent. per annum, and may be collected by seizure and sale or suit, as provided for the collection of other taxes. And it is further agreed that the assessment of the property involved in this suit was made and approved by the city council of the said city of Austin on the 12th day of October, 1912, and that such assessment was duly and legally made and said rolls approved on said date under and by virtue of the charter of the city of Austin, and that the said taxes became delinquent on the 12th day of December, 1912, and, by reason of the failure of the defendant herein to pay said taxes, the same bears interest from said 12th day of December, 1912, at the rate of 6 per cent. per annum, and, further, by reason of the said defendant's failure to pay said taxes on said date, the said penalty of 5 per cent. then and there became due and payable: Provided, plaintiff is entitled to recover of defendants said taxes.

"(11) It is hereby agreed that the defendant herein deposited in the state treasury of the state of Texas the securities hereinafter named, under provisions of section 8, c. 170, of the General Laws of Texas, enacted by the Thirtieth Legislature, and approved April 24, 1907, p. 318, Acts of Thirtieth Legislature 1907, which reads as follows:

" 'Sec. 8. That any insurance company com-

ing within the provisions of this act, or the stockholders thereof, may, in addition to the deposit required by this act, at its or their option, deposit with the treasurer of this state the capital stock or any part thereof, of such company, or securities covering such capital stock, and may, at their option, withdraw or substitute such stock or securities so voluntarily deposited; provided, that the substituted securities shall be approved by the insurance commissioner.'

"The securities which were so deposited on January 1, 1908, were in the following amounts and character: One note for $75,000, executed by Faber Planting Company on the 23d day of August, 1906, and due on the 23d day of August, 1916, which said note is secured by a deed of trust on 4,000 acres of land. And one note for $25,000, executed by H. Masterson on February 7, 1907, and due February 7, 1908, which said $25,000 note is secured by four vendor's lien notes, Nos. 1 to 4, three for $25,000 each, and one for $15,000, making a total of $90,000, which said vendor's lien notes were executed by the Texas Town Lot Improvement Company, and payable to H. Masterson. That said $25,000 note was renewed in the year 1908, to become due in 1910. All of which said notes and deed of trust were on deposit in the state treasury in the city of Austin, Tex., on the 1st day of January, 1908, as was permitted by law, and which said two notes so deposited in the state treasury as aforesaid were and are of the aggregate reasonable cash, market, and face value of more than $100,000.

"For the year 1909 there remained on deposit by the defendant, under like circumstances and conditions in said state treasury, on the 1st day of January of said year 1909, the following amount and character of securities: One note for $75,000, executed by Faber Planting Company on the 23d day of August, 1906, and due the 23d day of August, 1916, which said note is secured by a deed of trust on 4,000 acres of land. And one note for $25,000, executed by H. Masterson on February 7, 1907, and due February 7, 1908, which said $25,000 note is secured by four vendor's lien notes, Nos. 1 to 4, three for $25,000 each, and one for $15,000, making a total of $90,000, which said vendor's lien notes were executed by the Texas Town Lot Improvement Company, and payable to H. Masterson. That said $25,000 note was renewed in the year 1908, to become due in 1910. All of which said notes and deed of trust were on deposit in the state treasury in the said city of Austin, Tex., on the 1st day of January, 1909, as was permitted by law, and which said two notes so deposited in the state treasury as aforesaid were and are of the aggregate reasonable cash, market, and face value of more than $100,000.

"(11a) It is agreed that, upon the making of said deposit, the defendant received the official receipt of the state treasurer therefor,

and that, after the making of said deposits and the issuance of receipt of the state treasurer therefor, the defendant advertised the fact of the issuance of such deposits and such receipts, and printed such fact upon the policies issued by said defendant.

"(12) It is agreed that all of said securities were payable at the home office of the defendant in the city of Houston, Harris county, Tex., together with principal and interest, and not in the city of Austin, Travis county, Tex.; that, while said securities were in the custody of the treasurer of the state of Texas, defendant, under the terms of said act of 1907, could at any time withdraw the same, or any part thereof, substitute other credits therefor, if it was desired, or withdraw the entire deposit at any time at its pleasure, without substituting other securities therefor.

"(13) It is agreed that on January 1, 1908, the capital stock of defendant was $100,000, and that the surplus was $16,134.24; that on January 1, 1909, the capital stock of defendant was $100,000, and its surplus was $13,419.99; that of the said capital stock of defendant there was invested in the said securities on deposit with the state treasurer at Austin the sum of $100,000 on January 1, 1908, and the sum of $100,000 on January 1, 1909.

"(14) It is further agreed that the defendant had and owned moneys, credits, securities, and other personal property in the city of Houston, Harris county, Tex., and elsewhere, on the 1st day of January, 1908, to the amount and value of $116,134.24, which is shown by a verified statement of the auditor of the said defendant company hereto attached marked 'Exhibit A,' and made a part hereof; and it is further agreed that the said company assessed for taxation moneys, credits, securities, and other personal property to the amount of and value of $62,500, as will be shown by a verified copy of the assessment rolls of the city of Houston, Harris county, Tex., for the year 1908, which is hereto attached and marked 'Exhibit B,' and made a part hereof.

"It is hereby further agreed that the defendant had and owned moneys, credits, securities, and other personal property in the city of Houston, Harris county, Tex., and elsewhere, on the 1st day of January, 1909, to the amount and value of $113,419.99; which is shown by the verified statement of the auditor of defendant hereto attached and marked 'Exhibit C,' and made a part hereof; and it is further agreed that the said company assessed for taxation moneys, credits, securities, and other personal property to the amount and value of $75,000, as will be shown by the verified copy of the assessment rolls of the city of Houston, Harris county, Tex., for the year 1909, hereto attached and marked 'Exhibit D,' and made a part hereof.

"(14a) It is agreed that for many years

it has been the custom and policy of the city of Houston to assess securities of banks and insurance companies domiciled in said city of Houston at less than the full valuation, and that during the year 1908 the securities of the Guarantee Life Insurance Company were assessed on a basis of 60 per cent. valuation, and during the year 1909 on a basis of 66⅔ per cent. of their value, as is shown by the affidavit hereto attached from James P. Welsh, assessor and collector of the city of Houston during the years 1908 and 1909.

"(15) It is agreed that during each of the years 1908 and 1909 the defendant, through its general counsel and fourth vice president, J. F. Wolters, and other officers, at various times made credits upon said notes of interest payments, and on one occasion withdrew the note for $25,000, executed by H. Masterson, and had same forwarded by mail to the First National Bank of Houston, Tex., and had the said H. Masterson to execute a new note for like amount, which said new note was then deposited with the state treasurer, and the original note surrendered to the maker.

"(16) It is expressly understood and stipulated that nothing contained in this agreement shall be construed as a waiver on the part of the defendant to contend that, as a matter of law, the city of Austin has no jurisdiction, authority, or power whatsoever, either under its charter or any general law, to render for taxation or collect taxes upon any intangible personal property, including the securities deposited by defendant in the state treasury for 1908 and 1909 that may be on deposit, located, or situated in any state department in the capitol of the state of Texas, or any other building or premises over which the state of Texas has exclusive jurisdiction and control by reason of the fact that same is property belonging to the state of Texas.

"(17) It is further agreed that, if the plaintiff is entitled to a recovery of the defendant for the taxes sued upon, it is entitled to judgment in the amounts named in Exhibits A and B, attached to plaintiff's petition, aggregating the sum of $3,671.48, taxes and penalty, and in addition 6 per cent. interest thereon from December 12, 1912. [Signatures of Attorneys.]

"It is further agreed that the charter of the city of Austin is hereby made a part of this agreed statement of facts, the same as if a copy were attached thereto, and that either party may read to the court or cite any article, section, or part thereof, for the purposes of the trial of this cause.

"It is further agreed that the deposit of the securities herein described was made by the defendant with the state treasurer on August 10, 1907; that the H. Masterson $25,000 note remained on deposit with the state treasurer until March 28, 1911, when it was delivered to the defendant, and in lieu thereof there was deposited with the state treasurer on said date two notes on R. E. Sears, aggre-

gating $26,000; that the $75,000 Faber Planting Company note remained on deposit with the state treasurer until April 29, 1913, when same was delivered to defendant, and there was substituted therefor other securities, aggregating $76,500, which, together with the Sears notes, aggregating $26,000, still remain on deposit with the state treasurer. [Signatures of Attorneys.]"

Judgment was rendered in favor of appellee for $3,671.48, as taxes and penalties, with 6 per cent. interest from December 12, 1912.

### Opinion.

[1] Three issues are presented by this appeal, viz.: Were the notes sued on personal property, within the meaning of our tax laws? Was their situs in the city of Austin during the years 1908 and 1909? And were they employed by appellant in its business *in the city of Austin* during said time?

Appellant concedes that, if said notes were employed by it in its business in Austin during the years for which the tax was levied, the judgment should be affirmed, but denies that such was the fact. With this contention we agree. Appellant was not in business in the city of Austin any more than it was in business in every other city or county in Texas in which its agents sold insurance. Its principal and, so far as the record shows, its only office was in the city of Houston. It is true that by depositing said notes with the state treasurer it obtained a better financial standing in Austin and elsewhere, but the same results would have followed had a reputable bonding company in Austin guaranteed its contracts; but such guarantee would not have made Austin its place of business.

[2] Appellant contends that the notes are not property; that the property is the debt, of which the notes are merely evidence. Except when taxation is being considered, this statement is in accord with legal terminology, and, strictly speaking, is a fact. But it has been held by the courts of this state and of other states, and by the Supreme Court of the United States, that, for the purpose of taxation, bonds and notes and other negotiable instruments are more than mere evidences of debt—that they are *property*. State v. Fidelity Co., 35 Tex. Civ. App. 214, 80 S. W. 544, and cases there cited; Jesse French P. & O. Co. v. City of Dallas, 61 S. W. 942. Whatever difference of opinion may exist on this, as an abstract proposition of law it cannot be doubted that a state has the power to declare such instruments property for the purposes of taxation (State v. Fidelity Co., supra), and this state, as our statutes were construed in Hall v. Miller, 102 Tex. 289, 115 S. W. 1168, has so declared. See, also, State v. Fidelity Co. and Jesse French Piano & Organ Co. v. City of Dallas, supra.

[3] If these notes were property, they were tangible, personal, corporeal property, capa-

ble of having a situs, independent of the domicile of the owner, and, if so, we think the evidence shows that their situs was in the city of Austin. The situs of tangible personal property is the place where it is actually located, unless such location be temporary; that is, with a definite idea of its removal from such place within a short time. It is true that appellant had the option to withdraw the notes at any time; but it is evident that it had no intention of doing so. Keeping these notes, or others of like amount and value, on deposit permanently with the state treasurer was of great financial benefit to appellant. It deposited them in 1907. The $75,000 note was not due until August 23, 1916. It was kept continuously on deposit with the state treasurer until about the date of the trial of this cause—nearly six years—when it was substituted with other like securities. The $25,000 note was renewed in 1908; the renewal note maturing in 1910. This renewal note was substituted for the original, and remained on deposit with the state treasurer until 1911, when it was substituted by two other notes aggregating $26,000, which notes remained on deposit to the date of the trial. The law under which these deposits were made permitted, though it did not require, such deposits. The appellant advertised the fact that it had made and was maintaining such deposit, and printed the same on its policies, which it was permitted to do, only while such deposit remained. By making such deposit, appellant not only increased its financial standing in Texas, but also was enabled to obtain a permit to do business in other states, without further security, which it could not otherwise have done. We do not think it can be said, under these circumstances, that the notes were only temporarily in Austin at the time the taxes were levied upon them by that city.

Aside from the question as to whether the notes were property, or only evidences of debt, which is intangible, we think the judgment of the trial court must be affirmed. The decisions as to whether the situs of a debt is, for the purposes of taxation, at the domicile of the owner, or at the place where the evidence of such debt is permanently located, are irreconcilable. That intangible property follows its owner is a fiction of law, which many courts have disregarded when opposed to the equitable consideration that property ought to bear its just proportion of taxes at the place where it receives governmental protection, and this is the view which obtains in Texas, as we understand the decisions of our courts. This view has been so fully considered and so exhaustively discussed, with such abundant citation of authority in the cases of Hall v. Miller, 102 Tex. 289, 115 S. W. 1168; State v. Fidelity Co., 35 Tex. Civ. App. 214, 80 S. W. 544, and Jesse French Piano & Organ Co. v. City of Dallas, 61 S. W. 942, that a further discussion of the subject by us would be a work of supererogation.

Appellant, in support of its contention, cites the case of Ferris v. Kimble, 75 Tex. 476, 12 S. W. 689, and contends that the subsequent cases above referred to do not overrule or limit the doctrine announced in that case, but differentiate it, by the fact that in that case Ferris was a resident of Texas, and in the other cases the owners of the debt were nonresidents. To our minds the distinction is without difference. The actual situs of personal property depends upon a given state of facts, and not upon who owns it, or where the owner resides. If the Ferris Case can be differentiated from the other and later cases above referred to, we think it must be upon the fact that the notes sought to be taxed by the city of Waxahachie were at all times in the possession of Ferris, who resided outside of said city, by reason of the fact that they were in his private portfolio, over which he alone had control. We do not feel called upon to express any opinion as to the soundness of this deduction, if indeed the court which rendered that decision was controlled by that fact. The opinion seems to be based upon that line of decisions which hold that "moneys and credits are assessable at the place of the owner's residence." If this be true, it seems to us immaterial whether the owner resides in the state or out of it. The later decisions in this state certainly do not so hold. It appears to us that the real basis of the later decisions is that notes are *property*, and therefore taxable, under our laws, at the place where they are situated. "Promissory notes are now recognized as property, and are included in the terms of the statute of 1905." Hall v. Miller, supra. "Such personal estate [the debt] may be said to exist where the obligations for payment are held." Hall v. Miller, 110 S. W. 170. "Bonds and securities, when properly executed, assume a concrete form which gives them a tangible situs." State v. Fidelity Co., 35 Tex. Civ. App. 218, 80 S. W. 544.

Our Constitution (article 8, § 11) declares that "all property, whether owned by persons or corporations, shall be assessed for taxation; and the taxes paid in the county where situated. * * *" Article 7505, R. S. (formerly article 5063), defines personal property as follows: "Personal property shall, for the purposes of taxation, be construed to include all * * * evidences of debt owned by citizens of the state." Whatever else a note may be, is it "evidence of debt"? "Person" includes corporations. R. S. art. 7506. Within the meaning of our tax laws, the appellant is a person and a citizen of this state. As defined by article 7505, its notes are property. The notes upon which the tax was levied were at the time of such levy situated in the city of Austin. It is agreed that the tax on the notes was legally levied, and should be paid, "provided plaintiff is entitled to recover of defendant said taxes."

[4] It appears from the agreed statement of facts that appellant rendered these notes for taxes in the city of Houston, in Harris county, Tex., for the years 1908 and 1909, and paid such taxes to said city. If these notes were legally assessable in Austin, Travis county, Tex., for the years 1908 and 1909, they were not legally taxable in the city of Houston, and the voluntary payment of such tax in and to said city of Houston is no defense to their payment in and to the city of Austin, where such tax was legally assessable and payable. State v. Fidelity Co., supra. The facts in this case· are stronger for appellee on this point than were the facts in the case above cited. There the tax was legally assessed by the state of Maryland; here it was illegally assessed by the city of Houston.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.