ROBERTSON et ux. v. CONNECTICUT GENERAL LIFE INS. CO. et al.

No. 1968.

Court of Civil Appeals of Texas. Waco.

April 25, 1940.

Rehearing Denied May 30, 1940.

H. J. Cureton, of Meridian, and W. V. Dunnam, of Waco, for appellants.

Bryan & Maxwell, of Waco, and Read, Lowrance & Bates and Hamilton, Lipscomb, Wood & Swift, all of Dallas, for appellees.

ALEXANDER, Justice.

This is a usury suit. George P. Robertson and wife brought this suit against Connecticut General Life Insurance Company and Dallas Bank & Trust Company to cancel a debt and deed of trust lien on the ground that the contract provided for a usurious rate of interest and that the payments which had been made as interest were sufficient to discharge the principal debt. The Connecticut General Life Insurance Company reconvened and sought judgment for its debt with foreclosure of its lien. The undisputed facts and the material findings of the jury are as follows:

On October 15, 1909, Robertson and wife executed to A. H. Kahler a note for $3,500, due in five years and secured by a first deed of trust lien on the land in question. The record does not disclose the rate of interest borne by this note but it is asserted in the brief that it bore 8 per cent per

annum. In addition, said deed of trust contained a provision requiring the debtors to pay the taxes assessed against the note or bond under certain conditions. This tax clause will be set out in full later. At the same time they executed a second lien to secure the payment of a note in the sum of $353.30, payable in five annual installments to cover additional interest on the principal note. The principal note above referred to was assigned to National Life Insurance Company on November 29, 1909, and was later assigned to United States Bond & Mortgage Company on October 16, 1914. On November 1, 1914, Robertson and wife executed and delivered to United States Bond & Mortgage Company a deed of trust to secure the payment of a note in the sum of $3,500, due on the 1st day of November, 1919, and bearing interest at the rate of 6½ per cent per annum. This note was secured by a first deed of trust lien on the land in question, which deed of trust contained the tax clause above referred to, requiring the debtors to pay taxes assessed against the note and bond under certain conditions. Presumably it was given in renewal of the balance due on the 1909 note. On the same day the debtors executed a second deed of trust to the same concern to pay a note in the sum of $350, payable in two installments of $175 each, but the record does not disclose when these installments were due. The evidence does show that one of these installments was paid in 1915 and the other in 1916, and it may be inferred therefrom that they were payable during said years. This second note purported to represent a part of the interest charged on the first note. The principal note was assigned to National Life Insurance Company on November 30, 1914, and was later assigned by that company to Dallas Trust & Savings Bank (now Dallas Bank & Trust Company) on June 16, 1920. On October 22, 1919, Robertson and wife executed to Dallas Trust & Savings Bank a note for $3,500, due on 1st day of November 1924, bearing interest at 6 per cent per annum. This note was secured by a first deed of trust on the land in question, which contained the tax clause above referred to. Said deed of trust recited that the note therein secured was given in lieu of and in extension of the note previously executed to United States Bond & Mortgage Company, which note had been taken up and extended by Dallas Trust & Savings Bank at the request of the debtors.

At the same time the debtors executed a second deed of trust to secure the payment of five notes in the sum of $35 each, payable annually, which notes purported to represent a part of the interest charged on the principal note. The principal note last above described was assigned to National Life Insurance Company on May 8, 1920, and was reassigned to Dallas Trust & Savings Bank on November 5, 1924. On November 1, 1924, Robertson and wife executed to Dallas Trust & Savings Bank a note for $7,500, due November 1, 1934, and bearing interest at the rate of 6 per cent per annum. This deed of trust securing the same contained the tax clause above referred to. It recited that said note was given partly in lieu and extension of the balance due on the note executed in 1919, and that the Dallas Trust & Savings Bank, at the debtors' request, had advanced the money necessary to take up and extend said indebtedness. The balance of said loan, $4,000, represented new money advanced to the debtors at the time of the execution of the last lien. On the same day, Robertson and wife executed a second deed of trust to the same creditor to secure the payment of five notes for $75 each, one payable each year as interest on the principal note. The principal note last above referred to was assigned to Connecticut General Life Insurance Company on February 4, 1925. All of the notes above referred to provided for interest at 10 per cent per annum after maturity and the deed of trust securing same provided for acceleration of maturity in certain contingencies. The Connecticut General Life Insurance Company is a foreign corporation and during all the years that it owned the note here sued on, its home office was in Hartford, Connecticut. Said note was serviced by the Dallas Trust & Savings Bank, a Texas corporation, from 1925 to 1931, but during all the years in question, 1925 to 1934, said note was kept at the home office of the holder in Hartford. The debtors paid the interest installments as they accrued to the various holders of the several first lien notes up to and including the year 1930 and a part of the year 1931. They also paid the second lien notes to the holders thereof as they accrued.

The jury, in answer to special issues, found that in the preparation of the loan contract of date October 22, 1919, and in the preparation of the loan contract of date September 22, 1924, the Dallas Trust

& Savings Bank did not intend to exact or receive from the debtors a greater rate of interest than 10 per cent per annum; that Dallas Trust & Savings Bank was the owner of the principal note in the sum of $3,500 of date November 21, 1914, at the time the same was renewed and extended in 1919; that the note for $3,500 of date October 22, 1919 was owned by Dallas Trust & Savings Bank at the time the same was renewed and extended by the contract of date September 22, 1924; that' the principal note executed in 1924 was accepted by the Dallas Trust & Savings Bank for the purpose of resale to investors and that in the preparation of said contract said creditor intended to require the debtors to pay all such taxes as might thereafter be levied against said note by the city and county of Dallas and state of Texas; that the Connecticut General Life Insurance Company purchased said $7,500 note, of date 1924, with the intent to require the debtors to pay such taxes as might be assessed against said note; that from the year 1931 to 1936, inclusive, the Connecticut General Life Insurance Company, which was a foreign corporation, maintained a general office in Texas in the city of Dallas, but that the rate of the tax assessed by the city of Dallas, county of Dallas, and state. of Texas, plus the interest as provided in the note of date September 22, 1924, during any one year, would not be an amount in excess of 10 per cent as interest on the amount of said $7,500 note; and that the debtors, in the execution of the loan contract of 1924, did not intend to thereby waive the privilege of thereafter interposing the defense of usury to any of the loan contracts above referred to. Upon motion, the trial court rendered judgment non obstante veredicto in favor of Connecticut General Life Insurance Company for its debt with foreclosure of its lien and denied plaintiffs the relief prayed for.

It may be that the 1914 contract, because of the "squeezing in" of the installment payments on the second lien note, making the whole thereof payable during the first two years of the contract, and the provision for acceleration of maturity in certain contingencies, was usurious under the holding of the Supreme Court in the cases of Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269, and Dallas Trust & Savings Bank v. Brashear, Tex. Civ.App., 39 S.W.2d 148, Id., Tex.Com.

App., 65 S.W.2d 288. See also Lincoln National Life Ins. Co. v. Anderson, 124 Tex. 556, 81 S.W.2d 1112, 1113. But if we should hold that contract, or either of the others that were executed prior to 1924, usurious, the debtors would not be entitled to have payments made by them as interest on said prior contracts credited to the principal of the note now held by Connecticut General Life Insurance Company, because all of such payments were made prior to the execution of this last note and none of them were made to the holder of the last note. The record discloses that all payments made on the 1909, 1914 and 1919 contracts were made to the National Life Insurance Company. About the date of the maturity of the 1919 note, the exact date not being definitely established, National Life Insurance Company, who had become the owner of said note and who had collected all interest payments thereon, reassigned said note to Dallas Trust & Savings Bank on November 1, 1924, and the debtors renewed said indebtedness by executing a new note, being the note here sued on, to Dallas Trust & Savings Bank for the full amount of the principal of the old debt, together with the $4,000 new money advanced to the debtors, and shortly thereafter said new note for $7,500 was assigned to Connecticut General Life Insurance Company, the present owner thereof. If we should assume that either of said prior contracts was usurious and that by reason thereof the debtors had the right, if they had so elected, to have had all payments made thereon as interest applied as a credit on the principal, such payments would not necessarily be so applied as a matter of law. In other words, when a debtor makes an interest payment on a usurious debt, he may desire to have the payment credited on the principal, or it may be to his interest to have it treated as an interest payment, so as to authorize him to recover double the amount thereof as a penalty. Consequently, it is now generally held that a debtor has the right to elect as to whether or not payments so made by him shall be applied as credits on the principal or treated as interest payments, so as to enable him to recover under the penalty statute. Vernon's Ann.Civ.St. art. 5073; 42 Tex.Jur. 950; Adleson v. Dittmar Company, 124 Tex. 564, 80 S.W.2d 939; Temple Trust Co. v. Haney, Tex.Civ.App., 103 S.W.2d 1035; Hamilton v. Bill, Tex. Civ.App., 90 S.W.2d 929; Ingram v.

Temple Trust Co., Tex.Civ.App., 108 S.W. 2d 306. To hold otherwise would deprive the debtor of a valuable right. It might also result in an injustice to a subsequent creditor who had purchased the new note in reliance on its terms, believing that the debtor, by executing a new note for the full amount of the principal, had elected to treat all prior payments as payments on interest and not on principal. It is our opinion that when the debtors executed the new note to the Dallas Trust & Savings Bank and included therein the full amount of the principal of the old obligation, they elected not to treat interest payments previously made by them to the National Life Insurance Company as payments on the principal and waived their right to have the same so applied as credits on the new note in the hands of the Connecticut General Life Insurance Company, the present owner thereof. Hamilton v. Bill, Tex. Civ.App., 90 S.W.2d 929, par. 1; Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.2d 942; Ward v. Pace, Tex.Civ.App., 73 S.W. 2d 959; Dallas Trust & Savings Bank v. Brown, Tex.Civ.App., 48 S.W.2d 1044; Deming Investment Co. v. Giddens, Tex. Civ.App., 41 S.W.2d 260; Temple Trust Co. v. Murfee, 133 Tex. 53, 126 S.W.2d 643; Wallace v. D. H. Scott & Son, 133 Tex. 293, 127 S.W.2d 447; Travelers Ins. Co. v. Rowley, 133 Tex. 372, 128 S.W.2d 20.

■ This leaves for consideration only the question as to whether or not the 1924 loan contract was usurious. Independent of the tax clause, said contract provided for the payment of interest at a rate of less than 10 per cent per annum, the lawful rate. The fact that it provided for acceleration of maturity in certain contingencies and for interest at the rate of 10 per cent per annum after maturity did not render it usurious. Lincoln National Life Ins. Co. v. Anderson, 124 Tex. 556, 80 S.W.2d 294, 81 S.W.2d 1112; Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935; Texas Farm Mortgage Co. v. Rowley, Tex.Civ.App., 98 S.W.2d 854, par. 1; Duvall v. Kansas City Life Ins. Co., Tex.Civ. App., 96 S.W.2d 793.

The tax clause above referred to and contained in each of the loan contracts is as follows:

"The mortgagor hereby covenants with the mortgagee as follows: * * *

"That mortgagor will pay all taxes and assessments and premiums of insurance now due, or which may become due on said premises, or chargeable against said premises, or said bond, or upon the interest in said premises of the Mortgagee, or its successors and assigns, before the same shall become delinquent; or, if at any time, any law, either Federal or State, shall be enacted, imposing or authorizing the imposition of, any tax upon this mortgage, or upon said 'bond' or upon the principal or interest money secured by this instrument, by virtue of which the owner, for the time being, of the land above described, shall be authorized to pay any such tax upon said 'bond' or Mortgage, or the principal or interest of the debt secured, or upon either of them, and deduct the amount of such tax so paid from the debt hereby secured, or upon the rendering by any court of competent jurisdiction of a decision that the undertaking by the Mortgagor as herein provided to pay any such tax or taxes is illegal and inoperative, then or in any such event, the said principal sum hereby secured, and all interest thereon to the date of payment thereof, shall, at the option of the holder of said 'bond' be and become immediately due and payable, anything in this Mortgage or said 'bond' contained to the contrary notwithstanding; provided, this condition of this agreement shall not be construed to include any personal tax when imposed against the owner of said 'bond' or Mortgage at the residence or domicile of such owner."

■ We agree with appellants that under the above quoted provision of the contracts, the debtors were obligated to pay all taxes that might be assessed in this state against the note or bond at any place other than the residence or domicile of the owner thereof. We also agree with appellants that under the law a foreign corporation may establish a tax situs in this state at a place other than its residence or domicile, at which place its notes may be assessed for taxes. Kansas City Life Ins. Co. v. Duvall, 129 Tex. 287, 104 S.W. 2d 11, par. 2; Texas Farm Mortgage Co. v. Rowley, Tex.Civ.App., 98 S.W.2d 854; Hall v. Miller, 102 Tex. 289, 115 S.W. 1168; Duvall v. Kansas City Life Ins. Co., Tex.Civ.App., 96 S.W.2d 793, 797; Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 11, 12, 243 S.W. 778, 781, pars. 12 and 13, and authorities there cited. It was possible therefore for the creditor to have created a situation whereby the debtors could have been required to pay

any taxes that might be levied against the notes. The jury found that the creditor intended to require the debtors to pay all taxes that might be assessed against the note in the state and county of Dallas. However, the mere fact that the contract contemplated that the debtors should be required to pay all taxes that might be assessed against the note does not necessarily render the contract usurious. The contract stipulated on its face for a total rate of interest of only 7 per cent per annum, and unless the taxes which might have been levied against the notes would have exceeded 3 per cent per annum, the contract was not usurious. The evidence shows that the tax rate for the city of Dallas and for the county of Dallas and state of Texas for the years 1924-34, inclusive, was as follows:

| Year | County Rate of Dallas County | State Rate | City Rate Per Hundred |
|------|------|------|------|
| 1924 | 75 | 86 | $2.43 |
| 1925 | 77 | 76 | 2.47 |
| 1926 | 65 | 70 | 2.47 |
| 1927 | 67 | 82 | 2.46 |
| 1928 | 64 | 82 | 2.45 |
| 1929 | 68 | 88 | 2.43 |
| 1930 | 69 | 92 | 2.43 |
| 1931 | 74 | 90 | 2.43 |
| 1932 | 69 | 81 | 2.43 |
| 1933 | 77 | 79 | 2.43 |
| 1934 | 77 | 76 | 2.43 |

No taxes were ever assessed against the note in question. Under the above rate, if the notes had been assessed at their full face value, the taxes would have exceeded the equivalent of 3 per cent per annum and the contract would therefore have been usurious; but it cannot be presumed, as a matter of law, that the notes would have been so assessed at their full face value. While Revised Statutes, art. 7174, contemplates that all property shall be assessed for taxes "at its true and full value," as a matter of fact this is not always done. Lively v. Missouri K. & T. Ry. Co., 102 Tex. 545, 120 S.W. 852. In fact, the evidence in this case shows that during some of the years in question, property was assessed in the city of Dallas at much less than its true value, and it has been held that an assessment at less than the full value, when uniformly applied, is valid. City of El Paso v. Howze, Tex.Civ.App.,

248 S.W. 99, par. 4, writ refused, and authorities there cited. There was no showing as to the basis of valuation of property for tax purposes in the city and county of Dallas prior to the year 1931. During the years 1931-34, inclusive, the basis for assessment for city purposes in the city of Dallas was 45 per cent of the value of the property. There was no showing as to the basis of assessment for county and state purposes for any of the years in question. Therefore, it was not conclusively established by the evidence that under the prevailing standards of valuation and the prevailing rates fixed by the city, county and state, for the years in question, the taxes which might have been levied against the note by the city and county of Dallas and state of Texas would have equalled or exceeded 3 per cent per annum. We certified to the Supreme Court certain questions of law involved in this case, and that court, in connection with the matter here under consideration, made the following statement: "However, the indebtedness bore only 7 per cent interest per annum. It certainly cannot be said that on its face it was unlawful. Norris v. Land Mortgage Co., supra [98 Tex. 176, 82 S.W. 500]. In order to show that it contained potentialities which would make it usurious, certainly it was incumbent on debtors to prove facts showing that under its terms the interest rate, by reason of tax levies, would at some time during the contractual life of the bond exceed 10 per cent. Without laying down any definite rule in this respect, we will say that, in our opinion, the burden would be upon the debtors to prove that under prevailing standards of valuation fixed from year to year, and under prevailing rate or rates fixed from year to year, the taxes which might be levied against the bond, when added to the interest contracted for, would cause the amount exacted to exceed the legal rate of 10 per cent per annum upon the amount of the bond unpaid. If and when this fact be established then the contract is to be regarded as usurious from beginning; but until such fact be established it cannot be said as a matter of law that the contract was usurious. In this particular it is peculiarly within the province of the Court of Civil Appeals to first determine the status and effect of the facts as proven in the case." See Robertson v. Connecticut General Life Ins. Co., Tex. Com.App., 137 S.W.2d 760, 765.

942

In the case at bar, the only issue submitted to the jury on the question here under consideration was as follows: "Special Issue No. 7. Do you find from a preponderance of the evidence that the rate of tax assessable by the city of Dallas, the county of Dallas and the state of Texas, plus the interest as provided in the notes of date, 22nd day of September 1924, during any one year would be an amount in excess of 10 per cent as interest on the amount of the note for $7500.00?" to which the jury answered "No." As a matter of fact, the evidence was insufficient to authorize the submission of the above issue, for there was no showing as to the basis of assessment for county and state purposes for any of the years in question. In fact, if the note had been assessed at its full value for state and county purposes and at 45% of its value for city purposes—the basis used by the city from 1931 to 1934—the tax would not have exceeded 3 per cent of the note, and hence the contract would not have been usurious. But if we should assume that the evidence was sufficient to raise the issue, since the issue was one essential to the debtors' recovery, the burden was on them to secure a favorable finding thereon, or else they failed to establish a right of recovery. Since the only issue submitted to the jury with reference to this ground of recovery was answered by the jury favorable to appellees, we must hold that the verdict was insufficient to support a judgment for appellants.

The appellants therefore failed to show that the contract was usurious. Since appellants failed to so establish that such contract was usurious, the trial court properly entered judgment for the creditor for the amount of the note with interest and attorney's fees.

Appellants suggest that, even though we should be correct in holding that the trial court, in the state of the record, properly entered judgment for appellees, we should reverse and remand the cause for a new trial, because the appellants tried the case under a misapprehension of the law, believing that they had a right to assume that the note, if assessed for taxes at all, would be assessed at its full value, and that in reliance on such belief, they failed to prove the prevailing standards of valuation at which property was assessed for taxes for the county of Dallas and state of Texas during the years in question.

They assert that upon another trial, they will be able to make such proof. The rule seems to be, however, that we are not authorized to reverse and remand an errorless judgment in order that the case may be more fully developed upon another trial. 3 Tex.Jur. 1143; Harris v. Shafer, 86 Tex. 314, 24 S.W. 263; National Life Co. v. McKelvey, 131 Tex. 81, 113 S.W.2d 160.

The judgment of the trial court is affirmed.