M. L. WALKER ET AL. V. TEMPLE TRUST COMPANY.

No. 6588.   Decided March 27, 1935.
Rehearing overruled May 1, 1935.
(80 S. W., 2d Series, 935.)

*J. B. Dibrell, Jr., Dibrell & Starnes,* and *Dibrell & Snodgrass,* all of Coleman, for plaintiffs in error.

The loan contract involved in this suit is usurious in that according to the terms of the contract, a greater rate of interest than ten per cent per annum may upon contingencies mentioned therein be collected at the option of the lender. Parks v. Lubbock, 92 Texas, 637, 51 S. W., 322; Galveston & Houston Inv. Co. v. Grymes, 94 Texas, 613; Shear Co. v. Hall, 235 S. W., 195; 27 R. C. L., sec. 24, p. 223.

*John B. Daniel,* of Temple, *Critz & Woodward,* of Coleman, *Black & Graves,* and *Charles L. Black,* of Austin, for defendant in error.

The contract involved was not usurious. Dugan v. Lewis, 79 Texas, 254, 12 S. W., 1024; 12 L. R. A., 93, 23 Am. St. Rep., 332; 41 C. J., 452; 1 Jones on Mort. (7th Ed) 82; Tinsley v. Boykin, 46 Texas, 593; Gillmour v. Ford, 19 S. W., 442; Vieno v. Gibson, 85 Texas, 432; 1 Pomeroy Eq. (4th Ed.) sec. 436; Williston on Contract, sec. 776.

*Seay, Malone & Lipscomb,* of Dallas, and *M. W. Terrell,* of San Antonio, filed briefs as amici curiae.

MR. JUDGE GERMAN delivered the opinion of Commission of Appeals.

The only question in this case is one of usury. The principal debt was $2000.00, represented by six notes, to which were attached interest coupons representing interest at 7 per cent per annum. The notes matured annually. These notes were secured by a first deed of trust lien.

There was another note for $258.00, payable in semi-annual installments, which note on its face contained the following language:

"This note is given for a part of the interest on a loan made to the undersigned by Temple Trust Company of Two Thousand and 00/100 Dollars due April 1, 1929, 30, 31, 32, 33, 34

and 1938, and in case the maker hereof exercises the option of paying said loan or any part thereof before maturity as provided in the bonds evidencing said loan, then this note shall be proportionately reduced."

This note was secured by a second deed of trust, and the contention that the loan was usurious arises by reason of the following stipulation in said second deed of trust:

"But if default should be made in the payment of any of the installments on the note above described for $258.00 or of the notes and bonds secured by the first mortgage aforesaid, or if default should be made in the compliance with any of the terms or conditions of said first mortgage, which are hereby adopted and made a part of this instrument, then the whole sum of money hereby secured being the unpaid balance of said note for $258.00 shall become due and payable at the election of the holder thereof."

It is claimed that this stipulation alone conferred on the lender authority to mature the interest represented by the $258.00 note before it matured, and put it in his power to exact interest in excess of the amount allowed by law. It is evident that if this provision, when construed in the light of all other provisions of the contract, was intended by the parties to actually furnish means by which, if enforced, the lender would be enabled to realize a sum as interest in excess of the amount allowed by law, the contract was usurious.

The trial court held that the contract was not usurious and that holding was affirmed by the Court of Civil Appeals, Chief Justice McClendon dissenting. 60 S. W. (2d) 826.

A like or similar question is involved in many other cases, and because of the great importance of the question involved it becomes necessary to restate some general principles.

The determination of whether or not usury exists in a contract is a matter involving first and preeminently the principle which is the pole-star construction, to-wit: The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rule of law which presumptively they intended to observe and obey in making the contract.

It is fundamental that to constitute usury there must exist an intention to exact more for the use, forbearance or detention of money than the maximum allowed by law. Of course where the contract "upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for

presumption, for the intent is apparent." When, however, as here, the presence of usury is sought to be established by an isolated provision of an extensive contract, the true meaning of such provision must be arrived at by interpreting the language of the specific stipulation in harmony with and as a part of the dominant intent evidenced by the contract in all its parts and as a whole. It is erroneous to say that any contingency, even though within the literal words of the contract, by which the lender may get more than the lawful rate of interest, makes the contract usurious,—when such contingency is evidenced only by some isolated provision of a general contract, without inquiring further to determine the real meaning of such isolated stipulation in the light of the true intention of the parties. To give arbitrary force to some separate stipulation in the contract, without further inquiry, is to depart from the master principle of construction,—the ascertainment of the real intention of the parties.

■ While of course courts have no right to depart from the terms in which the contract is expressed to make legal what the parties have made unlawful, nevertheless when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality. It is presumed that in contracting parties intend to observe and obey the law. For this reason the court will not hold a contract to be in violation of the usury laws, unless, upon a fair and reasonable interpretation of all its terms it is manifest that the intention was to exact more interest than allowed by law. "In short, the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other reasonable hypothesis." 66 C. J., p. 173.

■ As related to the foregoing principle of construction we may say that as unearned interest is no part of an indebtedness at the time of prematurity under an option by the lender, it is therefore uncollectible because of lack of consideration, and the presumption is that it was not to be collectible in the event of acceleration of undue interest installments; therefore, the rule should be, as clearly recognized in motion for rehearing in the Shropshire case (120 Texas, 400, 39 S. W. (2d) 282), that unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events, the court will give it the construction that the parties intended that the unearned interest should not be collected.

In this instance the note for $258.00 expressly stated upon its face that it was for a part of the interest on the loan of $2000.00 evidenced by the principal notes. This made it as much a part of the original notes as if it had been attached to one of them as one of the interest coupons. Bearing this relation to the principal indebtedness its existence as an enforcible legal obligation must be determined by such relationship and its essential nature, rather than by the acceleration clause contained in the instrument, which is intended primarily to furnish *security* rather than create an additional obligation of liability.

A most incisive and accurate statement of the nature of such a note, as well as the effect given by law to the prematurity provision of the note or deed of trust, in the absence of an express and positive intention in the contract to the contrary, is found in the case of Moore v. Cameron, 93 N. C., 51, in this language:

"The smaller bonds were executed not to create new obligations, but to put the interest in the form of an independent security, capable of transfer and separate enforcement by action. The relations of the one to the other are declared upon the face of each, and those for interest are intended to be of the nature and effect of coupons severed from the principal obligation. They represent and are meant to represent, as do proper coupons, the *accuring interest as incident to the loan,* and where a full payment is made of this, and its interest-bearing capacity is extinguished, there can be no interest, as there can be no further forbearance of which it is the measure of value. Now can the *form* in which the obligation to pay interest is put be allowed the effect of making the debtor pay interest, when as such none does or can accrue?

"The defendants ascribe this result to the fact that bonds therefor are given, and the deed declares upon a failure to pay any one of them, that each shall become a present indebtedness *without reference to their character as representing interest.* This would be to sacrifice *substance* to *form* and thwart, *by literal interpretation of a few words,* the clear intent and understanding by both parties, in entering into the arrangement under which, the securities were issued, and most oppressive in its operation on the debtor. The true and just construction is, in our opinion, that the lender reserves the right, in the contengency mentioned, to terminate the credit and recall what was then due of principal and interest without further indulgence or delay, and in order to this, to require a sale of the land conveyed for its security. This *election* exercised *involves the surrender of all the outstanding interest bonds not required*

*for what was then due, and so will the court adjudge."* (Italics ours except the words 'then due.')

From the foregoing it clearly appears that in cases where it is sought to make the contract usurious by reason of the acceleration clause in the deed of trust relating to interest coupons, or separate interest obligations, the intent to collect unearned interest in such event must be so clearly and positively expressed by the contract as to overcome the presumption that the parties intended to abide by the equitable rule which requires a surrender of unearned interest in order to obtain a foreclosure, and to leave no room for a reasonable hypothesis by which the imputation of usury may be avoided. In other words, the language of the whole contract, when fairly and reasonable construed, must make it manifest that there was a definite purpose and intent to collect the unearned interest, notwithstanding it had not matured into a fixed legal liability.

We think that in this instance the contract construed as a whole clearly is susceptible of a construction that notwithstanding the literal words of the acceleration clause in the second deed of trust, the parties did not contemplate the payment of unearned interest in the event of default and maturity of the indebtedness. In fact we think the contract fairly construed as a whole shows an intention not to do so.

Notes Nos. 5, 6 and 7 of the series evidencing the indebtedness, after the formal portions, each contained the following clause:

"The maker of this bond reserve the option to pay same in full on April 1, or October 1, any year, beginning April 1, 1932, by giving TEMPLE TRUST COMPANY thirty days advance written notice, and should this option be exercised, interest coupons attached, maturing after payment of bond, shall be null and void."

The interest coupons attached each showed that they were for interest on the bonds to which they were attached, and did not bear interest until after maturity.

The first deed of trust contained, among other things the following clause:

"That we will pay all taxes and assessments, and premiums of insurance now due, or which may become due on said premises, or chargeable against said premises, or said bond or upon the interest in said premises of TEMPLE TRUST COMPANY, or its successors and assigns, before the same shall become delinquent, provided that if any tax assessed within the State of Texas against the bond or debt secured hereby, or the interest in said premises of the said TEMPLE TRUST COMPANY, or

its successors and assigns *together with* the interest paid or agreed to be paid on such bond or debt shall exceed ten per centum per annum, then the grantors *shall not pay such excess* unless it shall have been first decided by the courts of last resort in this State, that the payment of such excess would not render this contract usurious, in which event grantors herein covenant to pay the same on demand."

The provision with reference to foreclosure was as follows:

"IT IS HEREBY FURTHER SPECIALLY AGREED that if any of said bonds or any interest coupons thereto attached, or any taxes or assessments, or charge of any kind against said property which shall have been paid by said TEMPLE TRUST COMPANY or its successors and assigns, remains unpaid for five days after the same are due, or in case any tax or assessment is assessed within the State of Texas against the debt or bond hereby secured, or the interest in said premises of the said TEMPLE TRUST COMPANY, or its successors and assigns, or upon the rendering by any court of competent jurisdiction of a decision that the undertaking by the grantor as herein provided to pay any *tax* or taxes, is legally inoperative, then at the option of the said TEMPLE TRUST COMPANY, or its successors and assigns, the whole indebtedness and all sums secured by this mortgage, *to-wit:* The *principal and interest then accrued on said bond,* and all advances made to or on account of the grantors herein, for taxes, assessments, and charges of every kind, shall at once become due and payable, and the moneys due on said bond and for advances as aforesaid, may be collected by a sale under this mortgage, or by a suit in the Court of Bell County, or otherwise, as the said TEMPLE TRUST COMPANY, or its successors or assigns, may elect."

There was the following additional clause:

"The legal holder and owner of the above described note shall have the option of foreclosing for the amount of interest *due,* plus attorney's fees, or of declaring both principal and interest *due* and foreclosing in the event of default in payment of *interest when due.*"

The purpose clause of the second deed of trust was as follows:

"This conveyance is intended, however, as a trust for the better securing the payment of one certain promissory note executed by M. L. Walker bearing even date herewith, payable to the order of said TEMPLE TRUST COMPANY, at its office in Temple, Texas, and further described as follows: BEING for the sum of Two Hundred Fifty-eight & 00/100 Dollars payable as follows: $30.00 on Oct. 1, 1928 and April 1, 1929; $27.00

on Oct. 1, 1929 and April 1, 1930; $24.00 on Oct. 1, 1930 and Apr. 1, 1931; $21.00 on Oct. 1, 1931 and Apr. 1, 1932; $6.00 on Oct. 1, 1932, and April 1, 1933; $5.00 on Oct. 1, 1933 and Apr. 1, 1934; $4.00 on Oct. 1, 1934 and Apr. 1, 1935; $4.00 on Oct. 1, 1935 and April 1, 1936; $4.00 on Oct. 1, 1936 and April 1, 1937; $4.00 on Oct. 1, 1937 and April 1, 1938. Should the option be exercised, as provided in the First Mortgage Notes, then the note which this instrument secures, *shall be proportionately reduced;* each of said installments bearing interest after maturity at the rate of ten per centum per annum. This mortgage is made subject to said first mortgage to TEMPLE TRUST COMPANY securing seven notes or bonds aggregating $2,000 payable to the said TEMPLE TRUST COMPANY. Said notes hereinabove described being given for *a part of the interest* on a loan of $2,000.00 as evidenced by said bonds secured by said first mortgage of even date herewith, and the said TEMPLE TRUST COMPANY, shall have all the rights of subrogation secured to Temple Trust Company by said first mortgage."

The note for $258.00 has hereinbefore been set out and showed that it was given for a part of the interest on the $2,000.00 loan.

Defendant in error as owner of all of the notes sued to recover the balance of the principal notes and accrued interest thereon, "and the proportionate part of interest to be earned on the installment note of $258.00 up to the date of judgment herein, and prays the court that the balance due on said note for $258.00 and representing unearned interest be cancelled."

5 This contract when fairly construed in all of its parts as a whole clearly manifests an intention on the part of defendant in error to avoid the collection of usurious interest, and negatives the idea that unearned interest was to be exacted. It is obvious, therefore, that the acceleration clause in the second deed of trust is so at variance with the general intent of the contract as a whole as to suggest that its appearance therein was due to the use of a printed form, without an intention that the literal language of the form was to create an obligation of liability in excess of the plain import of the notes themselves.

It follows from this that there was no usury in the contract and the judgment of the Court of Civil Appeals should be affirmed.

Opinion adopted by the Supreme Court, March 27, 1935.