**HAMILTON et al. v. BILL et al.**

**No. 1493.**

Court of Civil Appeals of Texas. Eastland.

Jan. 10, 1936.

Rehearing Denied Feb. 14, 1936.

Burgess, Chrestman & Brundidge, of Dallas, F. H. Jones, of Bay City, and Cole, Cole, Patterson & Bell, of Houston (Robert L. Cole, Sr., of Houston, and H. A. Bateman, of Dallas, of counsel), for appellants.

Read, Lowrance & Bates, of Dallas, for appellees.

LESLIE, Chief Justice.

Ruth S. Bill and husband instituted this suit against W. C. Hamilton and wife, Tina K. Hamilton, May 17, 1932, to recover on a $5,000 note executed by the latter

to the Deming Investment Company and by that company assigned and indorsed without recourse to the said Ruth S. Bill. Plaintiffs sought foreclosure of vendor's and deeds of trust liens securing the same. The parties will be referred to as in the trial court.

The defendants answered, presented a cross-action against the plaintiffs, and made. the Deming Investment Company a party. They alleged the note sued on was a usurious contract, as well as the one preceding it for the same amount.

Defendants averred that they had paid $4,800 usurious interest on the two alleged usurious contracts, and that such amount should be applied to the principal note in suit. They tendered $200 that would remain due on the note in the event said credits were given.

The plaintiffs denied the contracts. were usurious, pleaded estoppel, etc. The investment company denied usury, pleaded limitation, etc.

The case was tried before the court without a jury and resulted in a judgment in substance as follows: (1) The plaintiffs, the Bills, recovered $2,900 of the $5,-000 principal note in suit; (2) $290 attorney's fees and $239.37 delinquent taxes paid. Total recovery was $3,461.69, with foreclosure of lien securing the indebtedness.

The judgment denied defendants the following credits contended for in their cross-action: (1) Five interest payments of $300 each paid on the $5,000 principal note executed January 30, 1919, and maturing February 1, 1924; (2) three interest payments aggregating $500, same being additional interest on the loan of January 30, 1919; (3) seven smaller annual interest payments of $100 each amounting to $700 paid as additional interest and secured by second lien deed of trust executed February 19, 1924. This was interest on the note in suit. (4) No judgment was granted against the investment company, and no personal judgment taken against Tina K. Hamilton.

From the judgment, all parties appeal.

There are two loans involved in this litigation. The first was evidenced by a $5,000 promissory note dated January 30, 1919, and due February 1, 1924. The second, made to take up the first, was dated February 19, 1924, and due ten years after date, or February 1, 1934. The first loan contract will be spoken of as the five-year contract, and the last one, the basis of the instant suit, will be spoken of as the ten-year contract.

On January 30, 1919, the Hamiltons executed the first principal note for $5,000 due the Deming Investment Company five years after date. It drew 6 per cent. interest per annum, evidenced by five coupon notes for $300 each attached to the principal note. One of them matured each February first until paid. The principal note was secured by a first lien deed of trust on 320 acres of land in Matagorda county. At the same time the Hamiltons executed a second lien deed of trust to secure three additional interest notes due respectively February 1, 1920, 1921, and 1922, aggregating the $500. This represented the additional 2 per cent. interest for the five-year period of the loan.

Said principal note for $5,000 (the five-year loan) payable to the Deming Investment Company was immediately transferred by that company to S. F. Dutton. Notice by writing, or otherwise, of that fact was given to the Hamiltons, who thereafter annually paid the five $300 coupon notes to the Deming Investment Company, which in turn transmitted same to Dutton, the owner of the note. The three small interest notes aggregating $500 were paid by the Hamiltons to the Deming. Investment Company, who at all times owned the same.

Near the due date of the above $5,000 note, the Deming Investment Company reacquired the same from Dutton and upon the application and representation of the Hamiltons that the note represented a bona fide indebtedness and that they desired to procure a loan from the investment company to take up the same. That company agreed to a renewal and extension thereof with them. Thereupon, the investment company and said defendants entered, on February 19, 1924, into a transaction similar to the one of January 30, 1919, with the exception that the extension was for ten years from February 1, 1924, to February 1, 1934, and the second deed of trust securing the smaller notes covered ten annual notes of $100 each as an additional 2 per cent. per annum on the $5,000 principal note for ten years.

This last $5,000 note, the ten-year loan, was sold and transferred by the Deming Investment Company to Mrs. Ruth S. Bill without recourse, as above stated.

The Hamiltons continued to pay the coupon interest notes attached to this note to the Deming Investment Company, which in turn transmitted the same to Mrs. Bill, the owner of the note, when each payment was so made. The interest so paid over a period of seven years aggregated $2,100. During the same period of time, and on the same dates, the investment company collected from the Hamiltons on its own account seven of the $100 additional interest notes. It follows that the Hamiltons paid $2,100 interest on the note to Mrs. Bill and $700 to the investment company.

If, as contended by the Hamiltons, each of said loan transactions was usurious and they be entitled to a credit on the $5,000 note in suit (ten-year loan) with all the interest they have heretofore paid on either of the $5,000 notes, the aggregate amount of such interest would be $4,800, leaving the plaintiffs entitled to a judgment for $200, a proportionate attorney's ·fees, delinquent taxes, etc. This, in substance, is the contention of the defendants.

There is no .contention that a greater rate of interest than 8 per cent. per annum on the principal has ever been collected during one year upon either of ·the loan contracts involved. The contention of usury is predicated upon the accelerating clauses found in the notes and deeds of trust evidencing the respective loans. The Hamiltons seek additional credits on the note in suit, and the plaintiffs cross-assign error seeking to establish that the contracts are free from usury and that they are entitled to a judgment for the whole amount sued for.

The defendants predicate their appeal upon three assignments of error. The first one is to the effect that the court having found that the $5,000 note in suit and accompanying deeds of trust constitute a usurious loan contract and that the note in the hands of Ruth S. Bill was entitled to a credit of $2,100 usurious interest paid her, the court erred in not applying as a credit on the note the $1,500 interest paid to the Deming Investment Company for the account of its assignee S. F. Dutton on the note of January 30, 1919, the five-year loan.

The second assignment .is in principle the same as the first, complaining that the court erred in not crediting the note in suit with the $500 paid in discharge of the three second-lien interest notes on the said five-year loan.

The third assignment presents the contention that the court erred in not holding the note in suit subject to a credit of $700 paid by the Hamiltons to the Deming Investment Company as the owner of the small interest notes executed for the additional 2 per cent. interest on the note in suit.

Before considering the larger question of usury, the defendants' first and second assignments will be disposed of.

■ We overrule the first two assignments on the ground that the $1,500 interest paid on the five-year loan of date January 30, 1919, and the $500 interest paid thereon and secured by the second lien were not paid to the plaintiff Ruth S. Bill at all. She was a stranger to that loan contract, and if it were usurious, the $1,-500 interest, when so paid, was paid to S. F. Dutton, the assignee and owner of the note at the time, and the $500 additional interest was likewise so paid to the Deming Investment Company. In collecting and transmitting the $1,500 interest to Dutton, the investment company was merely his agent. Neither of these interest items being paid to the plaintiff Ruth S. Bill, nor in any way exacted by her, they can in no way be a legal offset to the indebtedness which she declared upon in this suit. Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942, 947; Ward v. Pace (Tex.Civ.App.) 73 S.W.(2d) 959 (error ref.); Dallas Trust & Savings Co. v. Brown (Tex.Civ.App.) 48 S.W.(2d) 1044 (writ ref.); Deming Inv. Co. v. Giddens (Tex.Civ.App.) 41 S.W.(2d) 260 (writ dis.)

Upon the same authorities the third assignment should be overruled. The Deming Investment Company owned the seven $100 notes, exacted the payment thereof, and the plaintiffs were in no way interested in the second lien notes. These notes were paid as interest, and not as principal. As paid, they cannot be credited against the principal in the hands of the plaintiffs.

■ The question of usury will be examined in the light of the assignments presented by the defendants and cross-assignments of the plaintiffs. The two loan transactions will be taken up in their chronological order. Some of the material facts must be briefly restated. The principal note for $5,000 executed by the Hamiltons, payable to the Deming Investment Company, dated January 30, 1919, bore interest at the rate of 6 per cent. per an-

num from February 1, 1919, until maturity, payable "annually according to the tenor of five interest notes all of even date herewith." The principal note. contained the following provision: "If any of said interest notes shall remain unpaid for 30 days after its maturity this note and all interest thereon accrued shall at the election of the legal holder thereof become for all purposes immediately due and payable."

The first lien deed of trust, dated January 30, 1919, securing said note, contains the following provision: "Now, therefore, if said note and interest thereon be paid when due * * * then these presents shall be null and void * * * but if default be made in the payment of said note or any installment of interest thereon * * * the whole sum of money herein provided and secured and all interest thereon to the date of payment thereof * * * may at the option of the holder of the note hereby secured * * * be declared due and payable * * * and * * * trustee * * * is hereby authorized * * * to sell the property * * * for cash * * * and * * * received the proceeds of said sale and out of the same shall pay first * * *; second, the debt and all sums of money, due or to become due hereunder with interest as agreed. * * *"

Additional interest notes (making up the 8 per cent. per annum interest agreed to be paid) aggregate $500, and the three notes representing the same bear even date with the principal note and are secured by a second lien deed of trust which contains the following provisions:

(a) "This deed of trust, however, and all indebtedness secured by the same is subordinate to the lien of the first deed of trust of even date herewith executed by the first party to Robert O. Deming, trustee, for the benefit of the Deming Investment Company, and the notes secured hereby embrace part of the interest agreed to be paid by first party on a total loan of $5,000.00. * * *"

(b) "If said notes be paid when due * * * then this mortgage shall be released at the cost of the mortgagors but if default be made in the payment of any of said notes * * * the whole sum of money herein secured may at the option of the holder of the notes * * * be declared due and payable * * *; and said first parties authorize * * * trustee * * * to sell * * * property * * * and to receive the proceeds * * * to be applied * * * first * * *; second * * *; third, to the payment and satisfaction of all sums hereby secured. * * *"

If there is an acceleration provision in the 6 per cent. coupon interest notes attached to said principal note, or in the notes described in the second deed of trust, such provision is nowhere reflected by this record. All stipulations bearing upon acceleration in any instrument evidencing said five-year loan transaction are set out above. Under the following authorities in this state we do not believe this loan contract, properly construed, is usurious. It does not provide a contingency for the exaction of unearned interest. It reflects no intention to collect interest at a greater rate than 10 per cent. per annum. Dugan v. Lewis, 79 Tex. 246, 14 S.W. 1024, 12 L. R.A. 93, 23 Am.St.Rep. 332; Lincoln Nat. Life Ins. Co. v. Anderson, 124 Tex. 556, 80 S.W.(2d) 294, 81 S.W.(2d) 1112; Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.(2d) 935; Wellfare v. Realty Trust Co. (Tex.Civ.App.) 85 S.W.(2d) 1067.

If these conclusions are correct and the 1919 contract is free from usurious provisions, it follows that this would be an all-sufficient reason for overruling the appellants' assignments Nos. 1 and 2 above discussed and overruled for another reason.

Near the expiration of the above loan, as noted, the Deming Investment Company reacquired the defendants' first $5,000 note and upon their application and representation that the same was a bona fide indebtedness, said company granted them the ten-year loan evidenced by the $5,000 note and accompanying deeds of trust, etc., forming the basis of the present suit.

On February 19, 1924, the Hamiltons executed to the Deming Investment Company this last note for $5,000, ten $300 coupon interest notes attached evidencing interest thereon at the rate of 6 per cent. per annum, and ten other interest notes representing an additional 2 per cent. per annum on the principal and secured by a second lien.

The principal note in this ten-year loan (1924) contained the following accelerative provision: "If any of said interest notes shall remain unpaid for 30 days aft-

er its maturity, this note and all interest thereon accrued shall at the election of a legal holder thereof become for all purposes immediately due and payable. * * *"

The first deed of trust securing said principal note and of even date therewith provided: "Now, therefore, if said note (the $5,000 note) and interest thereon be paid when due * * * then these presents shall be null and void * * * but if default be made in the payment of said note or any installment of interest thereon * * * the whole sum of money herein provided and secured and all the interest thereon to the date of payment thereof * * * may at the option of the holder of the note hereby secured * * * be declared due and payable * * * and * * * said trustee may sell said property * * * and * * * receive the proceeds of said sale and * * * pay first * * *; second, the debt and all sums of money due or to become due hereunder with interest as agreed. * * *"

Contemporaneously with the execution of the principal note and first deed of trust, the Hamiltons executed the ten additional interest notes each for $100, falling due each year for ten years, beginning February 1, 1925.

The $300 coupon notes contain no accelerating provision, and the record does not reflect that the body of these $100 notes contain any such provision. No copy of these notes appears in the statement of facts.

The second lien deed of trust securing these $100 notes contains the following provisions:

(a) "This deed of trust, however, and all indebtedness secured by the same is subordinate to the lien of the first deed of trust of even date herewith * * * and the notes secured hereby embrace part of the interest agreed to be paid by first party on a total loan of $5,000. * * *"

(b) "If said notes be paid when due * * * then this mortgage shall be released at the cost of the mortgagors, but if default be made in the payment of any of said notes * * * the whole sum of money herein secured may at the option of the holder of the notes * * * be declared due and payable at once. * * *"

Immediately following the paragraph from which the preceding excerpt (b) is taken, said second lien deed of trust contains the following additional paragraph: "If the holder or holders of the notes secured hereby, shall not declare the *entire series* due and payable for default in the payment of any of them at maturity, the above described property may be sold by the trustee or substitute trustee in the manner above produced at the request of the holder of the delinquent note or notes for the amount due thereon, together with any additional sum of money that may have become payable hereunder as stipulated above, and *such sale shall not extinguish this deed of trust or the remaining unpaid notes secured hereby or the lien on said land securing the same, but the purchaser at such sale shall be required to assume all unpaid notes of the series secured hereby and also this deed of trust which shall continue in force in all of its terms and provisions and subsequent sales may be made hereunder on default in the payment of any of said notes maturing thereafter and this deed of trust and the power of sale herein given shall not be extinguished until the last of said notes is paid or released by the holder or holders.*" (Italics ours.)

In the light of the foregoing authorities, and save and except for this last-quoted provision of the second lien deed of trust, we find nothing in the notes or mortgages securing them evidencing an intention to collect usury or exact unearned interest. The immediately preceding excerpt, however, calls for a different conclusion relative to this last loan contract. By the use of italics we have emphasized certain expressions in the above paragraph, but the entire language therein is most significant on the question under consideration. It speaks of the right of the holder to declare "the entire series of interest notes due on default," etc. It provides that the property may be sold on default in the payment of any one of the notes and that the "sale shall not extinguish this deed of trust or the remaining unpaid notes secured thereby." It further stipulates that the purchaser at such sale shall be required to assume "all unpaid notes of the series." To make certain all of these interest notes were intended to be collected, it is further stipulated in the paragraph that "the power of sale herein given shall not be extinguished until the last of said notes is paid." The language under consideration is an express interpretation or explanation of excerpt (b) above, giving it and the loan contract gen-

erally a definite meaning contrary to which no implied meaning or construction of an opposite character may be indulged. The English language could hardly furnish more appropriate words in which to express the lender's purpose and intent to exact unearned interest or accelerate the payment of unmatured notes, the aggregate of which would call for the payment of interest in excess of 10 per cent. per annum on the happening of the specified contingency. It would be difficult to find a more precise combination of words with which to express a stubborn determination to collect in any event and upon the happening of the contingency each and every one of the $100 interest notes secured by the second deed of trust.

For these reasons we are forced to declare that the loan contract under consideration is tainted with the vice of usury under the following authorities: Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.(2d) 287; Dallas Trust & Sav. Bank v. Brashear (Tex.Com.App.) 65 S.W.(2d) 288; Manning v. Christian, 124 Tex. 517, 81 S. W.(2d) 54; Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942. That being the nature of the contract under consideration, and the plaintiffs being the owner of the principal note and having collected usurious interest to the extent of $2,100, the trial court did not err in deducting that amount from the recovery allowed. In other respects the judgment as rendered is correct, and it is in all things affirmed. It is so ordered.

### On Rehearing.

The appellants' motion for rehearing presents again the points considered and overruled in our original opinion, but emphasizes the assignment that the trial court and this court erred in refusing to make application of all payments of usurious interest (on the principal note in suit) to the payment and liquidation thereof irrespective of whether the usurious interest was paid to the plaintiff, Mrs. Bills, or not. The contention seems to be grounded upon the proposition that when the borrower or maker of the usurious note pays usurious interest thereon, the law then and there applies the same to the principal note, regardless of who owns and collects the separate interest notes. The proposition is predicated on the facts as presented at length in our original opinion. To summarize, they are, in substance, (1) that the Deming Investment Company (defendant) payee in the principal note of $5,000, for a consideration, assigned the same to Mrs. Bill and retained the ten $100 additional interest notes, collecting seven of them ($700) and tendering the three unpaid notes for cancellation, etc. (2) That the entire usurious interest collected by her on coupons attached to principal note, amounting to $2,100, was applied to the principal note, but the $700 collected by the investment company was not applied to her principal indebtedness. Hence, the assignment under consideration.

Article 5071, Vernon's Ann.Civ.St., enacted in 1892, provides in part that a contract providing for a greater rate of interest than 10 per cent. per annum "shall be void and of no effect for the amount or value of the *interest only;* but the principal sum of money or value of the contract *may be received and recovered.*" (Italics ours.) At the same time a penalty statute was enacted in substantial respects the same as that now in force (article 5073, Vernon's Ann.Civ.St. amended in 1907). The part of article 5073, supra, pertinent here, reads: "Within two years after the time that a greater rate of interest than ten per cent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same."

We do not understand that there has ever obtained in this state any rule of law or statute forfeiting any part of the principal of the usurious loans, and since the enactment of the above statutes there is certainly no ground for such a contention. The proposition that the law immediately applies to the principal any payment of usurious interest under the contract is not sound. Considering the same or substantially the same proposition our Supreme Court in Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939, 941, said: "In the first place, it is not entirely accurate to say, since the enactment of the penalty statute in 1892, that payments of interest on a contract affected with usury are by law applied to the principal. The borrower is entitled to have them so applied if he desires it, but he may prefer to sue for penalties under article 5073 on account of such payments. He may within two years from the time the payments

were made assert the right to such penalties, even though the principal or a part of it is unpaid, and may offset the penalties against the principal. Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204; Yonack v. Emery (Tex.Com.App.) 13 S.W.(2d) 667, 70 A.L.R. 684. Of course he is not entitled to resort to both remedies, that is, the application to the principal and the collection of penalties, on account of the same payments of interest."

It is further held in that opinion that "Plaintiffs in error's contention is faulty in its assumption that payments of interest become payments of principal because they may be applied to the principal. They are still payments of interest, which may or may not be applied to the principal. They are payments of interest which, if they are applied to the principal, will serve to discharge it in whole or in part. If they were not payments of interest after they were made, then they could not serve as the basis for the recovery of penalties under article 5073."

It is clear that the borrower may elect to have the interest payments applied on the principal or "he may prefer to sue for the penalties." The significance of this proposition as applied to the instant case lies in the fact that if a borrower voluntarily becomes a party to a usurious contract, or a contract void as to the usurious interest, he need not pay such usurious interest to the person owning such usurious interest note, the same being void by statute. He may repudiate it and tender the amount of such usurious interest to the owner of the principal note as a legitimate payment, in part, at least, of that obligation. Manifestly, it would be unfair to permit the borrower to make such voluntary payment of usurious interest and thus honor the void contract in the hands of its owner, the Deming Investment Company in the instant case, and then proceed to have the amount thus paid applied to the valid principal owned by another and different person, in this case the plaintiff, Mrs. Ruth S. Bill, who had never owned the usurious interest notes paid to the investment company, or in any way benefited from their payment in the sum of $700.

If in such a situation the borrower desires to apply his money payments on the principal in the hands of the very person who owns it, the statute, by declaring such contract void as to usury, clearly marks the way and removes all obstacles to his doing so. On the other hand, if he elects to pay the usurious interest note to the one who owns it, but does not own the principal note, then he may recover the penalty from him to whom he paid it, but he cannot offset the amount of the usurious interest so paid against the amount of the valid debt in the hands of a different owner.

Further, the penalty statute gives a right of action to one who pays usurious interest to recover the penalty. This very right is inconsistent with the proposition that the law itself will apply all payments of usurious interest to the principal. If that were true, there could be no cause of action for a penalty until all the principal of the debt had been paid, and not even then unless and until in addition thereto some amount as interest was paid. Such is not the law, for it is too elementary to require citation of authorities that the penalty may be recovered as such after the payment of usurious interest, and that without regard as to whether or not the principal has been paid.

■ On the whole, we conclude that the right to pay usurious interest and to recover the statutory penalty therefor, by a cross-action in the suit upon the principal and to have same offset against the recovery on the principal does not apply or obtain in this state except when the usurious interest is paid to the owner of the principal debt.

These conclusions are sound, we think, when tested by fundamental principles. The appellant concedes that Ward v. Pace (Tex.Civ.App.) 73 S.W.(2d) 959, in which a writ of error was refused, is directly in point. The appellant suggests, however, that the rule thus approved and applied in the Ward Case is not authoritative, since the proposition or record presented to the Supreme Court did not warrant the announcement and application of the rule. Be that as it may, the point was so clear and of such a controlling nature in the Ward Case that we cannot bring ourselves to the conclusion that the Supreme Court did not fully and advisedly consider it when it refused the writ of error.

In addition to the authorities originally relied upon, the very clear opinion of the Supreme Court by Judge Smedley in Adleson v. B. F. Dittmar Co., supra, is, we think, sufficient authority for our holding on this point.

We have carefully considered the points presented in the motion for rehearing.

Finding no reason for changing the views expressed in our original opinion, the motion is overruled.