## TEXAS FARM MORTG. CO. et al. v. ROWLEY et al.

### No. 13418.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 9, 1936.

Rehearing Denied Dec. 4, 1936.

Renfro, McCombs & Kilgore, of Dallas, for appellants.

George M. Hopkins, of Denton, for appellees.

DUNKLIN, Chief Justice.

On the 11th day of April, 1923, Mrs. Elizabeth Rowley, a feme sole, borrowed $5,000 from the Texas Farm Mortgage Company and executed her note therefor, payable on the 1st day of January, 1934, with interest at the rate of 7½ per cent. per annum. The interest so charged was evidenced in part by coupon notes in the sum of $300 each, payable annually, representing 6 per cent. interest on the principal, and in part by a note in the sum of $804.17, payable in annual installments on the 1st day of January of each succeeding year. Contemporaneously with the execution of the $5,000 note and the obligations for interest and in order to secure payment of the same, Mrs. Rowley executed two mortgage liens upon certain lands situated in Denton county. One of those mortgages, which will be hereinafter referred to as the first mortgage, was given to secure the principal of the note and the interest coupon notes in the sum of $300 each. The second mortgage was given to secure the payment of the note for $804.17. Both of those mortgages were duly acknowledged and filed for record in the deed records of Denton county on the 20th day of April, 1923.

On May 8, 1923, the Texas Farm Mortgage Company executed a deed of assignment to the Travelers Insurance Company of the $5,000 note, together with the interest coupon notes in the sum of $300 each, and the mortgage lien given to secure the same. The other note for $804.17 was retained by the Texas Farm Mortgage Company.

This suit was instituted on June 30, 1934, by Mrs. Elizabeth Rowley and Art Schlofman and wife, who had purchased the land described in the deed of trust from her, against the Texas Farm Mortgage Company and the Travelers Insurance Company, seeking a judgment decreeing that the $5,000 note and the deed of trust given to secure the same stipulated for the payment of usurious interest and applying the same as credits on the principal of said note and requiring the defendants to accept the balance due after allowing such credits in full satisfaction of the loan and mortgage given to secure the same; and further decreeing a cancellation of the two deeds of trust upon plaintiffs' tender of the balance so remaining unpaid.

The two defendants joined in a general demurrer to plaintiffs' petition, which was overruled, but the Texas Farm Mortgage Company did not file an answer to the merits of plaintiffs' suit. The Travelers Insurance Company filed an answer to the merits, consisting of a general denial, alleging that it had paid delinquent taxes on the land described in plaintiffs' petition in the sum of $608.01, and by cross-action it sought a judgment over against the plaintiffs for the balance due on the note after allowing credits for interest paid thereon, plus the amount of taxes so paid by it.

The court entered judgment sustaining the plaintiffs' plea of usury, finding that

plaintiffs had paid as interest on the loan the sum of $3,279.20, which the court credited on the principal of the $5,000 note above mentioned, leaving a balance due on that note of $1,720.80 of said principal, which the court found the plaintiffs had tendered into court. There was a further finding that the Travelers Insurance Company had paid $608.01 taxes on the land covered by the deed of trust for and in behalf of plaintiffs. It was further decreed that if plaintiffs should tender into court the $1,720.80 plus the $608.01, aggregating $2,328.81, within ten days from the date the judgment should became final, then the notes mentioned above and the liens given to secure the same should be canceled; but further decreeing that in the event of plaintiffs' failure to pay said sums of money into court, then the Travelers Insurance Company should have and recover from plaintiff Mrs. Elizabeth Rowley the sum of $1,720.80 and 10 per cent. additional on that amount as attorneys' fees plus the sum of $608.01 taxes advanced by the Travelers Insurance Company, aggregating the sum of $2,500.89 with foreclosure of its deed of trust on the land described in plaintiffs' petition for that sum.

From that judgment, both defendants have prosecuted this appeal.

The first deed of trust stipulated that it was given to secure the payment of the principal and interest of the $5,000 note, with this further stipulation: "It is understood and agreed, that the party of the first part will promptly pay, as the same fall due or become payable, all State, County, Municipal and local taxes, assessments and charges that are now or may become a lien upon the property described herein; all state, County, Municipal and local taxes, assessments and charges now or hereafter laid or charged upon or against the promissory notes herein mentioned in this Trust Deed, or the indebtedness secured thereby, at the place where the land hereinabove described is situated, the owner of said debt not then being a resident of the county or municipality in which said land is situated; all inheritance and other Governmental taxes, of any kind, whether Federal or State, and all other legal charges that may be assessed against the property herein. described or charged against the party of the first part or their assigns, and that for non-payment might become a charge or lien against the land herein described; and in default thereof the owner of the debt may, at his option, pay said taxes, assessments or charges, or any part thereof, and such sums so paid shall become an additional part of the debt secured hereby, bear the contract rate of interest, be payable upon demand and be secured by the lien of this Trust Deed upon the land herein described, and by subrogation by all the rights, liens, remedies, equities, superior title and benefits held, owned, possessed and enjoyed at any time by any owner or holder of any of said taxes, assessments or charges so paid."

With these further stipulations:

"Now, it is further understood and agreed that if default be made in the payment of any indebtedness, whether principal or interest, herein provided for, when the same may become due and demandable, or if default be made in any stipulation, agreement or covenant herein contained, *then the whole of the indebtedness secured in and by this instrument may,* at the option of the said party of the third part, or any holder of said notes, or other indebtedness secured hereby, without notice to said party of the first part, *be declared due and payable,* and the said party of the third part or any holder of said notes or any other indebtedness secured hereby, may proceed to enforce this Deed of Trust as hereinafter provided, or, at its, or his, option, institute proceedings respectively for the collection at law or in equity, of such amounts as may be then unpaid." (Italics ours.)

"If default is made in the payment of any of the debts above described, or any portion thereof when due, or if any of the covenants or agreements herein set forth are not kept, then the said party of the second part, or his successor or successors hereunder, when so requested by the party of the third part, or any holder of said note or notes, or by any person interested in any other indebtedness herein provided for, may take possession of said property, and shall sell or cause the same to be sold, or so much thereof as may seem to him necessary to meet *said indebtedness* and the expense of executing this trust, including a commission of five per cent on the entire amount due and unpaid for his individual services. * * * The proceeds of such sale shall be applied, first, to the payment of the costs and expenses of executing this trust, including the commission of the said party of the second part, and ten per cent attorney's

fees, in the event of litigation; second, to the payment of the debt *due* said party of the third part, its successors or assigns; and the remainder, if any there be, shall be paid to the said party of the first part." (Italics ours.)

The $5,000 note embodied these stipulations:

"The payment of this note and interest is secured by a Deed of Trust which is recorded in the Public Records of Denton County, in the State of Texas.

"It is expressly agreed that if this note is placed in the hands of an attorney for collection after its maturity, or if collected by any proceeding in any court, including Courts of Bankruptcy and Probate, I will pay a sum equal to ten per cent of the entire amount, principal and interest, *due* herein as attorney's fees." (Italics ours.)

Indorsed on the back of the note is the following: "The maker of this note has the privilege of paying *$100 or any multiple thereof not to exceed one-fifth of the same* at any interest paying date, upon giving the Texas Farm Mortgage Company at its office in the City of Dallas, Texas, written notice of her intention so to do on or before November 1st in advance, and such payments, if any, *shall reduce* proportionately the amounts of the *unmatured interest notes* recited in and secured by both trust deeds." (Italics ours.)

The second deed of trust contains provisions for accelerating its due date and foreclosure proceedings substantially the same as those contained in the first deed of trust.

The note for $804.17, for which the second deed of trust was given as security, also provides as follows: "This note being given for part of the interest on a principal note of even date herewith, in which an option to pay $100 or any multiple thereof up to 1/5 at any interest payment date is retained, it is understood and agreed that the exercise of such option shall proportionately decrease this note."

We do not believe that the provisions of the two deeds of trust, stipulating for acceleration of due dates of the debt for nonpayment of interest, standing alone, manifest an intention to charge usurious interest on the loan, as insisted by appellees. Lincoln Nat. Life Ins. Co. v. Anderson, 124 Tex. 556, 80 S.W.(2d) 294, on rehearing 124 Tex. 556, 81 S.W.

(2d) 1112; Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.(2d) 935; Travelers Ins. Co. v. Greer (Tex.Civ.App.) 83 S.W. (2d) 1020; Mary Donnelly Zapalac v. Travelers Ins. Co. (Tex.Civ.App.) 84 S. W.(2d) 818, writ refused (Tex.Civ.App.) 84 S.W.(2d) 820; Felix Donley v. Travelers Ins. Co. (Tex.Civ.App.) 84 S.W.(2d) 815 (writ dismissed); Travelers Ins. Co. v. Anderson (Tex.Civ.App.) 89 S.W.(2d) 428 (writ dismissed); Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929 (writ refused); Dugan v. Lewis, 79 Tex. 246, 14 S.W. 1024, 12 L.R.A. 93, 23 Am.St.Rep. 332.

But we have reached the conclusion that the stipulation quoted in the first deed of trust, to the effect that in addition to the payment of the principal note and interest accruing thereon, the borrower would also pay "all state, county, municipal and local taxes, assessments and charges now or hereafter laid or charged upon or against the promissory notes herein mentioned in this Trust Deed, or the indebtedness secured thereby, at the place where the land hereinafter described is situated, the owner of said debt not then being a resident of the county or municipality in which said land is situated," tainted the loan with usury.

The record shows that the Travelers Insurance Company is a corporation, incorporated under the laws of the State of Connecticut, with its principal office in Hartford, Conn. After its acquisition of the principal note in suit, the note was sent to the home office of the company at Hartford and there kept among its records. But interest accruing on the note was collected by its duly appointed agent, the Texas Farm Mortgage Company in Dallas, Tex., and forwarded to the Travelers Insurance Company at Hartford, Conn. No evidence was introduced to show that the company had established any office in Texas, or has paid any taxes in Texas on the note; nor any evidence that the note has ever been kept in Denton county by either of the defendants. The record further shows that the Texas Farm Mortgage Company was incorporated under the laws of Texas, with its principal office and place of business in Dallas, Dallas county, Tex., and no evidence to show that it has maintained any office or agency in Denton county, Tex.

Manifestly, the Travelers Insurance Company might establish an agency in

Denton county for business purposes, including looking after the collection of the note. And the provision in the mortgage, to the effect that the borrower would pay any taxes that might be assessed against the note while the holder is a resident of another county, manifestly was intended to provide for payment of taxes on the note in the event it should have a taxable situs in that county by reason of establishing an office or agency in that county for transaction of any of its business. The stipulation could not have been employed with any other contingency in view; and therefore it manifests an intention to charge more than 10 per cent. interest for use of the money borrowed, in the event of the happening of that contingency and if the taxes on the note, plus the interest thereon, should exceed 10 per cent. per annum. Rev.Civ.Statutes, arts. 7147, 7153 and 7158; Hall v. Miller, 102 Tex. 289, 115 S.W. 1168; Texas Land & Cattle Co. v. City of Fort Worth (Tex.Civ.App.) 73 S.W.(2d) 860 (writ refused).

The record shows that the tax rate for Denton county for the year 1933 on promissory notes was 2.74 per cent. of the face value. That amount, added to the 7½ per cent. stipulated in the note, would have made 'a total of 10.24 per cent., which would have been chargeable against the borrower in the contingency mentioned above, thus evidencing that a like tax rate might have been fixed for all the years covered by the loan transaction. And in addition a further "municipal" tax might have been assessed if the note had acquired a taxable situs in the city of Denton, Denton county, under circumstances involved in Texas Land & Cattle Co. v. City of Fort Worth (Tex.Civ.App.) 73 S.W.(2d) 860 (writ refused), to say nothing of other "local taxes and assessments" charged against the note.

We quote the following from the opinion of Justice Greenwood in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, at page 410, 30 S.W.(2d) 282, 285, 39 S.W.(2d) 11, 84 A.L.R. 1269:

"A clear statement of the law which governs our decision is made in 27 Ruling Case Law, at section 24, on pages 223 and 224, in these words:

"'To constitute usury, it is of course essential that an excess of the legal maximum be exacted in consideration of the loan or forbearance. By this is meant an excess of the maximum prescribed by statute. Though there is authority to the contrary, it does not seem requisite that an excess be payable in any event. On the contrary a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, *by the terms of the transaction,* and the means used to effect the loan, he may by its enforcement be enabled to get more than the legal rate.'"

And further on rehearing at page 416 of 120 Tex., page 13 of 39 S.W.(2d), as follows:

"The contract derives no validity from the fact that payment of the promised compensation, which exceeded the highest allowable conventional interest, was contingent on the creditor's election to demand such excessive compensation. The fact that the contract stipulates for more interest than the law allows on a contingency involving no risk of principal and lawful interest condemns the contract. Once you treat the acceleration clause as obligating the debtors to pay more than permissible conventional interest, instead of stipulating for a penalty, the invalidity of the contract is inevitable. This results from the rule declared by the New York Court of Appeals in words as follows:

"'If the contract provide for the payment of the loan with interest, at all events, it is enough to render it usurious, if in addition to the legal interest, it provide for the payment of excessive interest, *upon a contingency.* A stipulation even for a chance of advantage beyond legal interest, is illegal.' Leavitt v. De Launy, 4 N.Y. [363] 369."

To the same effect is the opinion of Justice Greenwood in Deming Investment Co. v. Giddens, 120 Tex. 9, 30 S.W.(2d) 287. See, also, Manning v. Christian, 124 Tex. 517, 81 S.W.(2d) 54; Dallas Trust & Savings Bank v. Brashear (Tex.Com. App.) 65 S.W.(2d) 288; Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942.

We have examined the decisions cited by appellant in the cases of Norris v. Belcher Land Mortgage Co., 98 Tex. 176, 82 S.W. 500, 83 S.W. 799, and Aetna Life Ins. Co. v. Foster (Tex.Civ.App.) 66 S.W. (2d) 428, and other decisions cited, and do not believe the same are in conflict with the decisions in the Shropshire and Deming Cases.

■ The record shows that some of the interest payments, for which the court allowed credits, were made on the $804.17 note held by the Texas Farm Mortgage Company, and by another proposition appellant says that those payments should not have been credited on the principal of the $5,000 note held by the Travelers Insurance Company, citing and relying chiefly upon decisions in Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929 (writ refused); Ward v. Pace (Tex.Civ.App.) 73 S.W.(2d) 959 (writ refused).

We overrule that contention for reasons hereinafter noted.

■ Apparently the conclusion we have reached and expressed above is in conflict with the decisions in Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929, and Ward v. Pace (Tex.Civ.App.) 73 S.W.(2d) 959. But with due deference to those Courts of Civil Appeals and the able jurists who wrote the opinions, we believe they are contrary to the basic and controlling principles which we shall note and which were not discussed in those cases. Nor do we believe that the refusal of writs of error by the Supreme Court in those cases closes the door against a further consideration of the same question and makes those decisions binding in this case, under the doctrine of stare decisis. Rev.Civ.Statutes, art. 1750; Kempner v. Huddleston, 90 Tex. 182, 37 S.W. 1066; 7 R.C.L. § 35, p. 1008.

■ If the Texas Farm Mortgage Company, the lender of the $5,000, had retained both the note for the principal and the separate interest notes, and if the loan was tainted with usury, then undoubtedly that would have been a valid defense to a suit for the debt and foreclosure of lien. The vice of usury inured in both principal and interest notes at the time the loan was consummated and the Travelers Insurance Company purchased the principal note with actual notice of the provisions of both notes and deeds of trust and subject to that defense. It could not acquire a higher right than the assignor possessed. Furthermore, "it is now settled that there can be no innocent purchaser of a usurious note, either before or after maturity, and it is immaterial that there is nothing on the face of the note or the security to put the transferee on notice." 42 Tex. Jur. § 99, p. 1000.

The conclusions reached in the two cases cited above would limit the benefits of the defense of usury to credits on the principal of interest paid to the present holder of the principal note, and to deny such credits for interest paid to any former holder thereof and also interest paid to the holders of separate notes for interest installments. And the only recourse left to the borrower for relief would be to sue the persons to whom those payments were made in a court of this state of competent jurisdiction for double the interest paid as provided in article 5073, Rev.Civ.Statutes. If such persons are nonresidents of this state and it becomes necessary to sue in the states of their domiciles in order to acquire jurisdiction, the expenses of such a suit manifestly would exceed the demand in most instances, thereby rendering such a right of action worthless; to say nothing of the necessity of separate suits in the event payments of usurious interest had been made to different holders of several coupon interest notes and perhaps residing in different states.

Under provisions of articles 2014, 2015, and 2017, Rev.Civ.Statutes, Mrs. Rowley, the borrower, was given the right to plead payments of usurious interest as credits or offsets to a suit on the principal note, and that statutory right is the basis of the long-established rule of decisions holding, that such payments will be credited on the principal in a suit to collect principal and interest, when the borrower prays for that relief.

■ Article 5073, giving the right to recover in a separate suit double the amount of usurious interest paid, is another and different remedy accorded to the debtor but in no sense repugnant to the provisions of the other articles and the decisions thereunder, and hence cannot be construed as excluding the relief therein provided. Both will be given effect. The debtor may, at his option, invoke either of those remedies. Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939.

Independently of the stipulations in the deed of trust, the Travelers Insurance Company was subrogated to the tax lien for the amount of taxes advanced by it on the land covered by the deed of trust. The trial court did not allow interest on the amount of taxes so paid. The record shows that those tax payments were made as follows:

On January 22, 1930, $146.15.
On January 22, 1931, $146.43.
On June 19, 1932, $137.58.
On June 18, 1933, $158.05.

The total amount of interest claimed by the Travelers Insurance Company on those tax payments up to the date of the trial was $91.94, as stated in appellant's brief and not controverted by appellees.

The judgment of the trial court should have allowed that interest as an additional sum which plaintiffs were required to pay as a condition for the relief awarded; also 10 per cent. attorney's fees upon $1,720.80, the unpaid balance due on the $5,000 note after crediting the amount paid as usurious interest, all aggregating the sum of $2,592.83, and the conditional recovery on defendants' cross-action awarded by the court should have been for that amount, with foreclosure of appellants' mortgage lien for same.

Accordingly, the judgment of the trial court will be so reformed as to accomplish the changes noted above, and, as reformed, it is affirmed; all assignments of error being overruled.