## TEMPLE TRUST CO. et al. v. STUBBS et ux.

### No. 4586.

Court of Civil Appeals of Texas. Amarillo.

April 27, 1936.

Rehearing Denied May 18, 1936.

Jno. B. Daniel, of Temple, and Bean & Bean, of Lubbock, for appellants.

Wm. H. Evans and Vickers & Campbell, all of Lubbock, for appellees.

HALL, Chief Justice.

On or about December 16, 1924, C. F. Stubbs and wife conveyed to each of their four children 3.41 acres of land in Lubbock county, and the land conveyed to their son, Roger Q. Stubbs, is involved in this suit.

In the deed the father retained the vendor's lien to secure the payment of a note for $2,200, payable to the order of C. F. Stubbs sixty days after date, and signed by Roger Q. Stubbs. Thereafter, about February 10, 1925, the Temple Trust Company loaned Roger Q. Stubbs $1,980, and to evidence the loan Roger Q. Stubbs and wife executed eight notes, aggregating $2,-200, and a deed of trust upon the 3.41 acres which they owned to secure the payment of said notes. Four of the notes were for $150 each, three for $200 each, due March 1, 1926, to 1932, inclusive, and also one note for $1,000 due March 1, 1935, which provided for 7 per cent. interest from date. The first mortgage recites that the notes secured thereby were given in lieu, extension, and renewal of the $2,200 note which Roger Q. Stubbs had executed to his father in part payment for the land, and further provided that the vendor's lien securing the payment of such note should remain in full force and effect; that the owners and holders of the note secured by the deed of trust should be subrogated to the rights of and remedies of the original owner of the first vendor's lien note. C. F. Stubbs transferred the $2,200 vendor's lien note to the Temple Trust Company·by written transfer.

T. B. Duggan was the vice president of the Temple Trust Company, and its representative in Lubbock, and the trust company issued a check to him in the sum of $1,980, payable to "T. B. Duggan, Agent." He indorsed the check as follows: "Payable to C. F. Stubbs, T. B. Duggan, Agent." C. F. Stubbs never indorsed the check, but it was delivered to Roger Q. Stubbs, the appellee, who indorsed it when he deposited it in the bank. It was shown that the loan was negotiated to enable Roger Q. Stubbs to finish paying for improvements he was erecting on the 3.41 acres which his father had given him. It was shown that out of the sum received from the trust company, Roger Q. Stubbs paid the Higginbotham-Bartlett Company $1,496.60.

C. F. Stubbs had given each of his children, as heretofore stated, 3.41 acres of land, but no deed had been executed conveying the. property to either of them until December 16, 1924. However, Roger Q. Stubbs was in possession of his tract of land, and was building upon it. C. F. Stubbs had nothing to do with the improvements. It was raw land at the time his father gave it to him. It further appears

that Roger Q. Stubbs, during the period in which the improvements were being constructed, ran short of funds. He then went to Duggan, the vice president, to negotiate a loan, told Duggan that his parents had given him this property and that he had run out of money and wanted about $2,-000. Duggan suggested that a deed be made by the father, and a vendor's lien given for $2,200, so that the Temple Trust Company could be subrogated to the lien. Duggan, acting for the Temple Trust Company, then prepared, or caused to be prepared, the deed from C. F. Stubbs to Roger Q. Stubbs, the vendor's lien note, 'the transfer of deeds of trust, etc., in order to consummate the matter. Stubbs applied for and expected $2,000 so Duggan made the note in the sum of $2,200, and said he could get that amount, less 10 per cent., which would leave net to Stubbs $1,980.

The first four notes for $150 each, and the three notes for $200 each, which were due at intervals from March 1, 1926, to 1932, were indorsed by the Temple Trust Company to Joseph Von Tobel, the date of indorsement not being shown. Later the notes were indorsed without recourse by Von Tobel. These seven notes, and all interest thereon, were paid by Roger Q. Stubbs and wife to the Temple Trust Company. The eighth note, in the sum of $1,-000, was indorsed by the Temple Trust Company to Cora L. Hance, one of the appellants herein. This note was not paid.

Roger Q. Stubbs and wife first instituted this suit against the Temple Trust Company and H. C. Glenn, its receiver, to cancel the $1,000 note by having applied thereon all interest theretofore paid on the entire loan, which interest was claimed to be usurious by reason of the fact that the trust company paid only $1,980 for the $2,200 vendor's lien note. Plaintiffs subsequently learned that Mrs. Hance claimed ownership of the $1,000 note, and they filed an amended petition making her a party defendant. It was further alleged that Stubbs and wife borrowed only $1,980 from the Temple Trust Company and were charged $2,-200, evidenced by a loan which bore interest at the rate of 7 per cent. per annum from date, and in addition thereto $220 was withheld from them at the time the loan was consummated, thus obligating plaintiffs to pay more than 10 per cent. for any one year for the use of said $1,980 loan to them.

For the purpose of showing a fraud and scheme whereby it might collect usury, plaintiffs alleged that they owned the above-described lands and premises on and prior to February 15, 1925, although the legal title was in the name of C. F. Stubbs, the father. That the purported purchase from C. F. Stubbs of the tract of land, the execution of the vendor's lien note for $2,200 payable to C. F. Stubbs, the execution of the warranty deed by C. F. Stubbs and wife to Roger Q. Stubbs, the deed of trust by Roger Q. Stubbs to the Temple Trust Company, and the eight notes aggregating $2,200, and the transfer of the vendor's lien note from C. F. Stubbs to the Temple Trust Company, all constitute in fact one single transaction, and each and all of such acts were done and performed under the orders of the Temple Trust Company and with its knowledge as a subterfuge to conceal the usury in the loan of $1,980.

It was shown that plaintiffs did not know that Mrs. Hance, or any other person, owned either of the eight notes, or any interest therein, until long after plaintiffs filed their suit and the case had been tried the first time.

The court filed no findings of fact other than the findings recited in the judgment, that the loan was usurious, that plaintiffs had paid $2,098, which was $118 in excess of the amount justly due.

■ By its first two propositions the appellant challenges the sufficiency of the evidence to show that the contract was usurious.

Duggan, the vice president, did not testify. Roger Q. Stubbs testified that when he applied to Duggan for a $2,000 loan, and explained to him that he had not yet received a deed from his father to the premises, Duggan suggested that Roger Q. Stubbs secure a deed from his father conveying the 3.41 acres, and execute to his father a vendor's lien note for $2,200, and that the Temple Trust Company would take up this note and be subrogated to the lien. This was done and the note for $2,200 was executed, payable in sixty days. Roger Q. Stubbs further testified that Duggan deducted 10 per cent. of the amount of the loan, i. e., $220, as his commission for securing the loan. This amount, of course, was deducted at the time the check for $1,980 was delivered to Roger Q. Stubbs. The $1,000 note bore 7 per cent. interest.

The facts unquestionably show a usurious contract. It is held in Temple Trust Co. v. Stobaugh (Tex.Civ.App.) 59 S.W.(2d) 916, 918, that where, under a loan agreement, the lender can collect the amount loaned, together with more than 10 per cent. additional for its use if the borrower defaults in payment at the end of the year, the contract is usurious. Judge Baugh said in the Stobaugh Case:

"In the second place, the deed of trust and notes aggregating $1,350 provided that in case of default in payment of any note at maturity, or of any installment of interest, the lender might declare all of said indebtedness due and enforce the collection of the full amount. In other words, had the borrower defaulted in such payment at the end of the first year, the Temple Trust Company could have, under the express terms of its contract, enforced the collection of $1,350, the principal of the notes, which was 12 per cent. more than the amount loaned by it, and in addition 7 per cent. interest on said $1,350. That is, it could have collected the full amount of money lent by it, together with more than 19 per cent. additional for the use thereof, at the end of the first year, had the borrower defaulted. Such were the terms of its contract clearly and unequivocally expressed. This character of contract was expressly condemned as usurious by the Supreme Court in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11 [84 A.L.R. 1269]. And it is immaterial that the note itself did not show that a less amount was actually loaned than the principal recited in the note; or that the difference be designated as a 'bonus' or 'commission,' if in fact the lender receives it for lending his own money. Deming Investment Co. v. Giddens (Tex.Civ.App.) 41 S.W.(2d) 260, 262. Its usurious character is determined by whether the lender exacts directly or indirectly, for the use or detention of the sum actually lent, more than 10 per cent. per annum on the sum actually furnished by him to the borrower."

The first two propositions raise only an issue of fact, and we think the evidence is sufficient to support the court's finding, which condemns the contract as usurious.

■ The second contention that the court erred in crediting upon the note held by Cora L. Hance interest which plaintiffs had paid upon other notes of the series which

she never owned raises a more serious question.

The case of Hamilton v. Bill (Tex.Civ. App.) 90 S.W.(2d) 929, holds that a usurious loan contract, under which interest was paid to the then owners of notes and interest coupons, did not authorize an allowance for such payments in an action on an extension loan contract by subsequent owners of the notes, and that usurious interest paid on separate interest notes retained by the original payee after principal notes had been assigned was not deductible from the principal debt recoverable by the maker from the owner of the principal note. The court further said that the right to pay usurious interest and recover the statutory penalty therefor by a cross-action in a suit on principal, and to have same offset against recovery on principal, does not apply except when usurious interest is paid to the owner of the principal debt. In that case it was shown that the borrower had executed a principal note for $5,000 due in five years, payable to the Deming Investment Company, and immediately transferred by that company to S. F. Dutton. That notice in writing of that fact was given to the Hamiltons (payors), who thereafter annually paid five $300 coupon notes to the Deming Investment Company which, in turn, transmitted same to Dutton, the owner of the note.

In the instant case, it was not shown that Stubbs and wife had any notice whatever that Mrs. Hance had purchased the $1,000 note. No transfer from the Temple Trust Company or its receiver to Mrs. Hance was ever filed and recorded. After his appointment as receiver, Glenn made claim to Stubbs and wife of the right to hold said note as receiver, he demanded payment thereof from them, and granted them an extension. This was after he was appointed receiver in 1933, and he continued to make such claim until this suit was filed in the fall of 1933. He accepted $45 in part payment of the interest due from Stubbs on September 18, 1933, and agreed that Stubbs might pay the remainder in small installments. The $1,000 note was indorsed by the Temple Trust Company to Mrs. Cora Hance. The indorsement is not dated, and must be presumed to have been made before maturity and not subject to equities. Each payment which Stubbs and wife made upon their indebtedness was made to the Temple Trust Company, and

to its receiver after his appointment. But under the decisions these facts are all immaterial. Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929; Ward v. Pace (Tex.Civ. App.) 73 S.W.(2d) 959; Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942; Dallas Trust & Sav. Bank v. Brown (Tex. Civ.App.) 48 S.W.(2d) 1044; Deming Investment Co. v. Giddens (Tex.Civ.App.) 41 S.W.(2d) 260.

We think the court erred in crediting the payments made on the first and second series of notes upon Mrs. Hance's note for $1,000, thereby extinguishing it. She was entitled to judgment for the balance due on her note and a foreclosure of the lien to secure the balance due. We are not able, from the record, to ascertain what the exact amount of said balance is, nor are we required to calculate the interest and ascertain the amount of her recovery. This duty devolves upon her counsel. They would not be entitled to recover, however, against Mrs. Hance, since it has not been shown that she has received at any time more than 7 per cent. interest upon her note.

For the reasons stated, the judgment is reversed and the cause remanded.